ALICE KRAEMER, AS ADMINISTRATRIX OF EDWIN C. KRAEMER, DECEASED v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

March 11, 1921.

No. 21,961.

**Defendant's engineer not employed in interstate commerce.**

1. The plaintiff's intestate, an engineer, was taking a number of empty cars from a point on a spur line to a yard on the main line in the same state, where they were to be put upon a siding and used where convenience required. They had no present further destination. It is *held* that the deceased was not employed in interstate commerce and was not within the provisions of the Federal Employers' Liability Act.

**Federal Safety Appliance Act — intrastate train movement.**

2. The Safety Appliance Act applies to an intrastate train movement on an interstate railroad, and the plaintiff's intestate, in taking 17 cars from a yard on a spur track to a yard on the main line, a distance of three miles, using a switch engine, having no caboose, and operating without train orders, was engaged in a train movement as distinguished from a switching movement, and was within the protection of the Safety Appliance Act.

**Same—survival of action.**

3. There is implied in the Safety Appliance Act a right of recovery for death, though the act does not in express terms provide for a survival of the cause of action, and the personal representative of an employee killed on an interstate road because of a violation by the road of

[1]Reported in 181 N. W. 847.

the Safety Appliance Act, can recover in an action based on the stat-
ute, though the train movement in which the deceased was engaged was
intrastate. The record shows that the plaintiff is the administratrix and
the sole beneficiary.

**Workmen's Compensation Act does not conflict with Federal Act.**

4. A recovery in an action based on the Safety Appliance Act is not
prevented by the Workmen's Compensation Act of the state where the
accident occurred, though in terms applicable, and though the train
movement was intrastate.

**Violation of statute proximate cause of accident.**

5. The failure to have the air brakes coupled so as to be under engine
control, as required by the Safety Appliance Act, U. S. Comp. St. § 8614,
was a proximate cause of the death of the plaintiff's intestate who was
killed in a derailment by the cars not under air control crowding the
tender into the engine cab and crushing him against the boiler head.

Action in the district court for Hennepin county to recover $25,000 for
the death of plaintiff's intestate. At the trial before Hale, J., plaintiff's
motion for judgment upon the pleadings and stipulation of facts for
$9,500 was denied, and defendant's motion for judgment granted. From
the order for judgment, plaintiff appealed. Reversed.

*George C. Stiles* and *F. M. Miner,* for appellant.

*R. L. Kennedy, Donald Evans* and *Brown, Abbott & Somsen,* for re-
spondent.

DIBELL, J.

Action by Alice Kraemer, as administratrix of Edwin C. Kraemer,
against the Chicago and North Western Railway Company, to recover
damages for his death. There was judgment for the defendant and the
plaintiff appeals.

The case was submitted upon a stipulation of evidentiary facts. These
facts the court found true. It found specifically that the deceased was not
employed in interstate commerce. There was a general finding or con-
clusion that the plaintiff was entitled to no relief except under the com-
pensation act of Michigan, where the death of the deceased occurred while
in the employ of the defendant. The submission of the controversy with-

out findings of the ultimate facts in issue makes our work somewhat more difficult. But the following queries suggest all the points made against or in support of the judgment:

(1) Whether the deceased was employed in interstate commerce, so as to be within the Federal Employers' Liability Act?

(2) Whether, if the deceased was not employed in interstate commerce, and if death resulted from a violation by the defendant of the Safety Appliance Act, he was engaged in a train movement, in which event there could be a recovery, or in a switching movement, in which event there could not be? In this connection no question is made but that the Safety Appliance Act applies to an intrastate train movement on an interstate road.

(3) Whether, if the deceased was engaged in intrastate commerce and was injured by reason of the failure of the defendant to observe the Safety Appliance Act, his personal representative can recover for his death, the Safety Appliance Act not being in express terms a survival statute, and not naming the beneficiaries?

(4) Whether, if the deceased was engaged in intrastate commerce and was killed by a failure of the defendant to observe the Safety Appliance Act, a recovery in an action based on the statute is prevented by the Workmen's Compensation Act of Michigan, where the accident occurred, the compensation act being in terms applicable and the deceased subject to it?

(5) Whether the failure to observe the Safety Appliance Act was a proximate cause of the death of the deceased?

1. The defendant railway company is engaged in interstate commerce. The plaintiff's intestate was in its employ. The defendant has lines in Michigan and Wisconsin and in other states. A line passes through Quinnesec, Michigan. From this station a stub or spur line runs in a southerly direction across the Menominee river, which is the boundary between Michigan and Wisconsin, to a paper mill on the south bank of the river. The distance from Quinnesec is three miles. The paper mill location is called Niagara. There is no station there. No through trains reach it. The railroad serves the one industry. On the north bank of the river the paper mill has a woodyard. Cars are taken back and forth from Quinnesec to the paper mill and to the woodyard by switch engines un-

der the supervision of the yard foreman without train orders. Cabooses are not used. There are switches and sidetracks at the paper mill and at the woodyard.

On the morning of the day of his death, the deceased did some switching at the paper mill. In the afternoon he took his engine to Quinnesec. Then he went to the woodyard and brought back seven cars of wood and pulp. They were placed on a siding to await disposition. Their final destination was not shown. Then he went to the woodyard intending to bring back 17 empties which had been unloaded there two days before. They consisted of flat cars and box cars and gondolas. He started back with them for Quinnesec. The cars had no destination other than Quinnesec. They were to be put on a siding there to await orders. They might go anywhere. It does not appear that they had come from without, or were ever to go without, Michigan. Within the controlling decisions the plaintiff was not employed in interstate commerce within the Federal Employers' Liability Act. Comp. St. § 8657, et seq. The following cases are illustrative: Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed 1125, Ann. Cas. 1914C. 153; Illinois Cent. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. ed. 1051, Ann. Cas. 1914C, 163; Illinois Cent. R. Co. v. Peery, 242 U. S. 292, 37 Sup. Ct. 122, 61 L. ed. 309. In reaching this conclusion we do not forget the principle that one may be engaged in work so incidental and so related to interstate commerce as to be within the protection of the liability act, nor do we overlook the recent cases of Erie R. Co. v. Collins, 253 U. S. 77, 40 Sup. Ct. 450, 64 L. ed. 790, and Erie R. Co. v. Szary, 253 U. S. 86, 40 Sup. Ct. 454, 64 L. ed. 794.

2. The Safety Appliance Act applies to an interstate road, though the injury occurs in an intrastate train movement. Texas & P. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. ed. 874. It is conceded that the movement of the cars was without engine control of the air, and that, if it was a train movement, there was a violation of the Safety Appliance Act.

The distance of the haul from the woodyard to the Quinnesec yards was slightly under three miles. The cars were going 15 to 20 miles an hour. Their general method of movement is stated in the preceding paragraph. Between the two points a public highway was crossed. No railroads were crossed. There were no switches or sidetracks. It was a

straight haul. No stops were to be made. The cars were hauled as a unit. It is inferable that the cars were coupled and constituted a unit when the engine went for them. If the movement was a switching movement the Safety Appliance Act did not apply. We do not think it a switching movement. It was a train movement as distinguished from a switching movement. It was a train movement from yard to yard, and not a switching movement within a yard. The case is on principle fairly within United States v. Erie R. Co. 237 U. S. 402, 35 Sup. Ct. 621, 59 L. ed. 1019; United States v. C. B. & Q. R. Co. 237 U. S. 410, 35 Sup. Ct. 634, 59 L. ed. 1023; Louisville & J. Bridge Co. v. United States, 249 U. S. 534, 39 Sup. Ct. 355, 63 L. ed. 757; United States v. Pere Marquette R. Co. 211 Fed. 220; La Mere v. Railway Tr. Co. of City of Minneapolis, 125 Minn. 159, 145 N. W. 1068, Ann. Cas. 1915C, 667. In a late case, where as here the movement was off the main line, without train orders, and without many of the usual incidents of an ordinary train movement, the court said:

"But there is nothing in the act which limits the application of the provision here in question to operations on main line tracks. The requirement that train brakes shall be coupled so as to be under engine control is in terms (32 Stat. 943) applicable to 'all trains * * * used on any railroad engaged in interstate commerce.' It is admitted that this railroad is engaged in interstate commerce; and the cases cited show that transfer trains, like those here involved, are 'trains' within the meaning of the act. A moving locomotive with cars attached is *without* the provision of the act only when it is *not* a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains. Congress has not imposed upon courts applying the act any duty to weigh the dangers incident to particular operations; and we have no occasion to consider special dangers incident to operating trains under the conditions here presented." U. S. v. N. P. Ry. Co. 254 U. S. 251, 41 Sup. Ct. 101, 65 L. ed. —, reversing 255 Fed. 655, 167 C. C. A. 31.

3. The Safety Appliance Act is not in terms a survival act for the benefit of those suffering pecuniary loss. The Federal Employers' Liability Act is. The claim of the defendant is that the personal representative cannot recover for a death caused by a failure to observe the Safety Ap-

pliance Act when the deceased was not employed in interstate commerce. In Ross v. Schooley, 257 Fed. 290, 168 C. C. A. 374 (certiorari denied, 249 U. S. 615, 39 Sup. Ct. 390, 63 L. ed..803), the right of the administrator to recover was sustained, although it was not shown that the deceased was employed in interstate commerce and so within the Federal Employers' Liability Act. The court held that the right to recover for death was implied from the statute, referring, among other provisions, to the act of 1910 (Comp. St. § 8621), relating to "liability in any remedial action for the death or injury," etc. The survival of the cause of action, which the statute effects, is a part of the cause of action and not a matter of procedure. The court of appeals rested the right of action on the Federal statute. The plaintiff is the administratrix of the deceased and his sole heir, and the amount of the pecuniary loss which she sustained is stipulated. Under the record there is no question that she is the sole beneficiary.

4. It is claimed that, since the deceased was engaged in intrastate commerce, compensation is to be had under the compensation act of Michigan, and that an action based on the Safety Appliance Act does not lie. This question was considered in Ross v. Schooley, 257 Fed. 290, 168 C. C. A. 374, before cited. The conclusion was that the Workmen's Compensation Act did not prevent a recovery for death caused by a violation of the Safety Appliance Act in an appropriate action founded on the statute, though the compensation act was in terms applicable and the deceased subject to it. Taking the case as controlling the same result follows here.

5. The failure to have the air under engine control was a proximate cause of the death of the decedent. After derailment the engine went 160 feet. It was going 15 or 20 miles an hour. The cars crowded the tender into the cab and crushed the decedent against the boiler head. The derailment occurred at a place where the track was bad. The deceased might have been killed if the air had been under engine control. The killing which we are investigating is the particular one which occurred. It came from not having the train under air control. Counsel do not discuss proximate cause, and we pass it without further comment as satisfactorily shown.

Judgment reversed.