Max D. ERSKINE, Plaintiff-Appellant,

v.

CONSOLIDATED RAIL CORPORA-
TION, Defendant-Appellee.

No. 85–3478.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1987.

Decided March 17, 1987.

Herbert L. Bernsteen, Deborah Purcell Goshien (argued), Cleveland, Ohio, for plaintiff-appellant.

Thomas R. Skulina (argued), Sheila A. McKeon, Skulina & McKeon, Cleveland, Ohio, for defendant-appellee.

Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff Max Erskine appeals from the judgment of the district court denying his motion for a new trial. For the reasons set forth below, we affirm in part, reverse in part, and remand.

## I.

Plaintiff Max Erskine was employed by defendant Conrail from 1941 until February 1982. On May 27, 1980, he was working on a caboose with an angle cock that was allegedly defective. Later that day, in preparation for a switching operation, plaintiff attempted to release the air in the brake system by turning the angle cock. He testified that, because the angle cock was stiff, he had to use excessive force to loosen it. Consequently, the air was released too quickly, and plaintiff could not control the air hose attached to the angle cock. The metal end of the hose hit him in the jaw, causing extensive injury. Although plaintiff subsequently returned to work, his injury was exacerbated by cold weather. He was forced to keep his head wrapped in order to keep it warm. Because this was a safety hazard, Erskine was advised to leave the railroad.

On February 24, 1982, plaintiff filed the present action for personal injuries resulting from the accident. He alleged violations of the Federal Safety Appliance Act, 45 U.S.C. § 1 et seq., and the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq.

Plaintiff encountered tremendous difficulty in his efforts to conduct discovery. On February 24, 1982, he filed a request for production of documents including maintenance records on the caboose in question, witness statements, and plaintiff's personnel records.

On June 14, 1982, plaintiff filed interrogatories requesting information regarding reports prepared after the accident, records of disciplinary action taken against plaintiff, and "medical or other documents" regarding plaintiff. Plaintiff also filed a second request for production of documents, requesting plaintiff's medical records in the possession of defendant.

On October 12, 1982, defendant answered plaintiff's interrogatories. Defendant stated that the only inspection of the caboose occurred on May 30, 1980, and that plaintiff was verbally reprimanded as a result of his alleged negligence. Defendant stated that no departmental investigation was performed.

On November 3, 1982, plaintiff filed a motion to compel response to his request for production of documents and to complete answers to his interrogatories. The motion was granted on January 27, 1983,

and defendant was given thirty days to comply.

However, defendant failed to comply despite plaintiff's attempts to arrange the requested discovery. At a pretrial conference on June 8, 1983, defendant was given until July 3, 1983, to respond. Defendant then requested an extra thirty days, and plaintiff waited. Finally, on August 11, 1983, plaintiff filed a motion for default judgment. The motion was withdrawn on August 16, because defendant's response to the discovery request crossed in the mail with plaintiff's motion. Plaintiff contends that these responses were incomplete.

On January 10, 1984, the court granted plaintiff thirty days in which to complete discovery. At that time, summary jury trial was set for March 14, 1984. At the summary jury trial, the jury rendered a verdict for the plaintiff on his claim under the Federal Safety Appliance Act.

On March 5, 1984, plaintiff filed a request for admissions. On April 6, 1984, having received no response, plaintiff filed a motion requesting that all matters contained in the March 5 request be deemed admitted. Plaintiff also filed a motion for special instructions to be given to the jury prior to closing arguments, and a "motion to strike; motion in limine; and motion for sanctions," requesting that Conrail be restricted from producing or commenting on any documents not produced during the course of discovery.

On December 13, 1984, the court entered an order requiring counsel to prepare a proposed pretrial order to be submitted thirty days before trial, which was originally scheduled for March 12, 1985. In response to this order, plaintiff submitted a proposed pretrial order on March 7, 1985, containing lists of proposed witnesses and exhibits. Defendant prepared a proposed pretrial order, which was mailed to plaintiff on March 19, 1985.[1] Plaintiff's proposed order was amended on April 8, 1985. Trial was held April 9–11, 1985.

During trial, defendant introduced four documents which had not been provided to plaintiff during the course of discovery. Exhibits I and J are accident reports completed after the incident. Exhibit L is a committee report prepared by Thomas Huckabone, a Conrail trainmaster, after investigation of the incident.[2] Although plaintiff objected to the introduction of these exhibits on the ground of surprise, the district court admitted them as business records.

Defendant moved for a directed verdict on plaintiff's claim under the Federal Safety Appliance Act. The district court granted the motion on the ground that plaintiff had failed to establish a violation of the Act. The court submitted plaintiff's claim of negligence to the jury, which found that the angle cock was not defective, that Conrail was not negligent, and that plaintiff's own negligence was the sole cause of his injury.

On April 22, 1985, plaintiff filed a motion for a new trial, alleging that he had been prejudiced by the introduction of materials not produced during the course of discovery and that the district court erred in directing a verdict on the issue of liability under the Federal Safety Appliance Act. The motion was denied by order dated May 23, 1985.

In this appeal plaintiff presents two issues for our consideration:

(1) whether the district court erred in failing to submit plaintiff's claim under the Federal Safety Appliance Act to the jury;

(2) whether the district court erred in refusing to grant a new trial on the basis of prejudice allegedly caused by the introduction of documents not provided in the course of discovery.

## II.

### A.

■ As indicated above, the district court refused to submit plaintiff's claim

---

1. The record fails to indicate that defendant ever filed its proposed pretrial order.

2. Exhibit K is a "ten-day report" reflecting plaintiff's work record during the ten days after the accident. The introduction of Exhibit K is not challenged on appeal.

under the Federal Safety Appliance Act to the jury because it found that the type of accident in which plaintiff was injured is not encompassed by the Act. The standard utilized for determining whether a claim may be submitted to the jury is a familiar one:

> For a case to be properly submitted to the jury, there must be "more than a scintilla" of evidence supporting the claim. *Brady v. Southern Railway Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed.2d 239 (1943).

> When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict the court should determine the proceeding by non-suit, directed verdict ... or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims.

*Id.* at 479–80, 64 S.Ct. at 234. *See also Morelock v. NCR Corp.*, 586 F.2d 1096, 1104 & n. 10 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Kerwood v. Mortgage Bankers Ass'n of America, Inc.*, 494 F.Supp. 1298 (D.D.C.1980). In determining whether the evidence is sufficient to be sent to the jury or to support a jury verdict, the evidence, and reasonable inferences therefrom, is to be viewed in the light most favorable to the non-moving party and the court must not consider the credibility of witnesses nor weigh the evidence. *Morelock*, 586 F.2d at 1104. To do otherwise is to substitute the court's opinion for that of the jury. *Id.*

*Wilkins v. Eaton Corp.*, 790 F.2d 515 (6th Cir.1986). *See also Bellamy v. Bradley*, 729 F.2d 416, 418 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 579 (6th Cir.1979). The same standard is utilized by an appellate court reviewing the trial court's disposition on the motion. *Milstead v. International Brotherhood of Teamsters, Local Union No. 957*, 580 F.2d 232, 235 (6th Cir.1978).

Section 1 of the Federal Safety Appliance Act provides:

> It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose.

45 U.S.C. § 1. Section 9 of the Act provides further guidelines with respect to air brakes, requiring every train to have power brakes on not less than fifty percent of the cars. 45 U.S.C. § 9. The percentage has been increased to eighty-five percent. 49 C.F.R. § 232.1.

Plaintiff attempts to prevail on his claim under the Federal Safety Appliance Act because injury caused by violation of the Act is actionable without proof of negligence. "[A] failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence." *O'Donnell v. Elgin, J. & E. Ry.*, 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949). If a violation of the Safety Appliance Act is a "contributory proximate cause" of plaintiff's injury, he is entitled to recover damages. *Black v. Penn Central Co.*, 507 F.2d 269, 271 (6th Cir.1974) (quoting *Carter v. Atlanta & St. Andrews Bay Ry.*, 338 U.S. 430, 435, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949)).

In the present case, the district court concluded that the Safety Appliance Act was inapplicable because the air brake provisions only cover train movements and not switching movements. The uncontroverted evidence produced at trial established that the locomotive was not attached to the

train at the time of plaintiff's injury and thus a switching movement was involved.

The district court's opinion is entirely consistent with the Supreme Court's interpretation of the air brake provisions. The Court has considered the provisions on several occasions, and each time the Court recognized that the air brake provisions are designed to cover defects which prevent the brakes from effectively controlling movement of the train. The Court has noted that

> History showed that hundreds of workers had been injured or killed by the stopping of unbraked cars, by the operation of hand brakes, and by the use of hand couplers. This history, well known to Congress, was the primary purpose behind the legislation.

*United States v. Seaboard Air Line R.R.,* 361 U.S. 78, 82–83, 80 S.Ct. 12, 15–16, 4 L.Ed.2d 25 (1959) (footnote omitted).

In *United States v. Erie R.R.,* 237 U.S. 402, 35 S.Ct. 621, 59 L.Ed. 1019 (1915), the Court held that switching operations are not covered by the Act. *Id.* at 408, 35 S.Ct. at 624. However, the movement of trains over mainline tracks is within the purview of the Act because in the course of such movements the trains are "exposed to hazards which made it essential that appliances be at hand for readily and quickly checking or controlling their movements." *Id.* at 408, 35 S.Ct. at 624.

Again, in *United States v. Chicago B. & Q. R.R.,* 237 U.S. 410, 35 S.Ct. 634, 59 L.Ed. 1023 (1915), the Court held that the Act applied to the movement of a train over two miles of main-line track.

> The work in which they were engaged was not shifting cars about in a yard or on isolated tracks devoted to switching operations, but moving traffic over a considerable stretch of main-line track,—one that was a busy thoroughfare for interstate passenger and freight traffic. Every condition suggested by the letter and spirit of the air-brake provision was present. *And not only were these trains exposed to the hazards which that provision was intended to avoid or minimize, but unless their engineers were able readily and quickly to check or control their movements they were a serious menace to the safety of other trains which the statute was equally designed to protect.*

*Id.* at 412–13, 35 S.Ct. at 635–36 (emphasis supplied). Subsequent decisions have emphasized that the Act applies only when the train is engaged in movement as a train. *See Louisville & Jeffersonville Bridge Co. v. United States,* 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757 (1919); *United States v. Seaboard Air Line R.R.,* 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25 (1959). "A moving locomotive with cars attached is without the [brake] provision of the act only when it is *not* a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains." *United States v. Northern Pacific Ry.,* 254 U.S. 251, 254–55, 41 S.Ct. 101, 102, 65 L.Ed. 249 (1920) (emphasis in original).

The cases cited above are cases in which the United States was attempting to collect the statutory penalty for violation of the Act. However, in cases where railroad employees were injured as a result of a violation of the Act, the same standards have been applied.

In *Coray v. Southern Pacific Co.,* 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949), the Supreme Court considered the applicability of the Safety Appliance Act in a case involving personal injuries. Plaintiff's decedent was employed as a signal maintainer by the defendant railroad. He was killed when the car in which he was riding crashed into the train it was following because the air brakes in the train were defective and they locked when the air escaped. The Utah Supreme Court held that the Act did not apply because it was designed "not to protect employees from standing, but from moving trains." *Id.* at 522, 69 S.Ct. at 276. The Court disagreed:

> We do not view the Act's purpose so narrowly. It commands railroads not to run trains with defective brakes. An abrupt or unexpected stop due to bad brakes might be equally dangerous to employees and others as a failure to stop

a train because of bad brakes. And this Act, fairly interpreted, must be held to protect all who need protection from dangerous results due to maintenance or operation of congressionally prohibited defective appliances. *Fairport, P. & E.R. Co. v. Meredith,* 292 U.S. 589, 597, 54 S.Ct. 826, 829, 78 L.Ed. 1446. Liability of a railroad under the Safety Appliance Act for injuries inflicted as a result of the Act's violation follows from the unlawful use of prohibited defective equipment "not from the position the employee may be in, or the work which he may be doing at the moment when he is injured." *Brady v. Terminal R. Ass'n,* 303 U.S. 10, 16, 58 S.Ct. 426, 429, 430, 82 L.Ed. 614; *Louisville & N. R. Co. v. Layton,* 243 U.S. 617, 621, 37 S.Ct. 456, 457, 61 L.Ed. 931. In this case where undisputed evidence established that the train suddenly stopped because of defective airbrake appliances, petitioner was entitled to recover if this defective equipment was the sole or a contributory proximate cause of the decedent employee's death.

*Id.* at 522–23, 69 S.Ct. at 276–77. Once again, the violation existed because the brakes failed to effectively control the motion of the train. *See Kraemer v. Chicago & N.W. Ry.,* 148 Minn. 310, 181 N.W. 847 (1921) (plaintiff relieved from burden of establishing negligence when decedent's death occurred in the course of a train movement and as a result of the failure of the air brakes to control the movement of the train); *La Mere v. Railway Transfer Co.,* 125 Minn. 159, 145 N.W. 1068 (1914) (employee relieved from burden of estab-

lishing negligence when injury was caused by violation of the Safety Appliance Act).

Plaintiff argues that the direction of a verdict on this issue was improper because the Safety Appliance Act is to be liberally construed. Although there is authority to support this proposition, *see United States v. Akron, Canton & Youngstown R.R.,* 397 F.2d 139, 142 (6th Cir.1968), courts have recognized that the Act should not be given a construction foreign to its purpose. *United States v. Southern Ry.,* 341 F.2d 669, 671 (4th Cir.1965).

 The clear import of these decisions is that the Act applies only to train movements and that it was designed to insure that trains stop effectively. We agree with the district court that the Safety Appliance Act does not apply to the instant case. The uncontroverted evidence establishes that the train was involved in a switching movement when the injury occurred. Moreover, the injury did not result from a failure of the air brakes to effectively control the movement of the train. Accordingly, we conclude that the district court did not err in directing a verdict on this issue.[3]

### B.

Plaintiff contends that he was prejudiced by the introduction of documents not provided during the course of discovery. He also contends that he was prejudiced by the testimony of Bill Thompson, which indicated that defendant had maintenance records prepared on the caboose which were not produced, despite the fact that the maintenance records were also requested during the course of discovery.[4]

---

**3.** Plaintiff argues that defendant was precluded from arguing that plaintiff's case is not covered by the Safety Appliance Act because defense counsel stated in opening argument that "[t]here is no dispute that the case will be governed by the law of the Federal Employers Liability Act, FELA, and the Safety Appliance Act...." Joint App. Vol. II at 23. We conclude that this statement did not constitute a waiver of a challenge to the sufficiency of plaintiff's case under the Safety Appliance Act. *See United States v. Standard Oil Co.,* 618 F.2d 511, 520 n. 13 (9th Cir. 1980) (statement during hearing on motion for summary judgment in opening argument that

the "entire case" was before the court did not preclude subsequent argument on issue not raised or briefed on motion); *Hayes v. Consolidated Service Corp.,* 517 F.2d 564 (1st Cir.1975) (statement in opening argument that wrongful discharge was "nub" of plaintiff's complaint did not constitute waiver of conspiracy claim.).

**4.** Plaintiff argues that the admission of certain medical records and deposition testimony constituted prejudicial error. In light of our disposition of the issues discussed below, we find it unnecessary to discuss those claims.

■ One of the primary objectives of the discovery provisions embodied by the Federal Rules of Civil Procedure is elimination of surprise in civil trials. *Davis v. Marathon Oil Co.*, 528 F.2d 395, 404 (6th Cir.1975), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *Nutt v. Black Hills Stage Lines, Inc.*, 452 F.2d 480, 483 (8th Cir.1971). "[T]rial by ambush is not contemplated by the Federal Rules of Civil Procedure." *Woods v. International Harvester Co.*, 697 F.2d 635, 639 (5th Cir. 1983). Nevertheless, a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced. *See, e.g., DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 518 (4th Cir.1985); *Saltzman v. Fullerton Metals Co.*, 661 F.2d 647, 651–52 (7th Cir.1981); *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 682–85 (3d Cir. 1980). In order to prevail on his motion for a new trial, plaintiff must show that he was prejudiced and that failure to grant a new trial is inconsistent with substantial justice. *Saltzman*, 661 F.2d at 650–52; 28 U.S.C. § 2111.

■ In the present case, plaintiff argues that he was prejudiced by the admission of Exhibits I, J, and L because the documents irreparably damaged his credibility. On direct examination, plaintiff testified as follows:

Q. Now, did the railroad make an investigation of this accident?

A. Not to my knowledge.

Q. Had they made an investigation, what would have been the purpose?

A. The purpose would have been to find if there was a defect, or anything on my part, or the exact cause of the accident.

Q. Did you ever notice—were you ever notified that there was an investigation?

A. No.

Q. If there was an investigation, how did [sic] you get notified?

A. By written notice.

During the presentation of its case, defense counsel elicited testimony from Thomas Huckabone, a Conrail trainmaster, that he and two others formed a committee which conducted an investigation of the incident involving plaintiff, that they had concluded that plaintiff's negligence caused the accident, and that plaintiff was reprimanded. Huckabone also produced a report, prepared by him, confirming his version of the event. Huckabone also produced a personal injury report and a claim report regarding the accident. Despite the fact that plaintiff propounded an interrogatory requesting "any oral or written statement, account, report, memorandum or testimony concerning [the incident]," this information was never provided.

In response to an interrogatory requesting information regarding inspection of the caboose in question, defendant answered that a single inspection had been performed on May 30, 1980. This statement directly contradicts Huckabone's testimony that he inspected the caboose on the night of the accident and concluded that no defect in the angle cock was present.

In his request for production of documents, plaintiff also requested all inspection and maintenance reports on the caboose in question. Defendant produced a single document—the May 30 inspection report. Yet Bill Thompson, who conducted that inspection, indicated at trial that other maintenance records regarding the caboose were kept on file in Altoona, Pennsylvania. The existence of these records was never revealed to plaintiff.

The aggregate of defendant's conduct throughout the course of pretrial proceedings resulted in precisely the sort of "trial by ambush" that the Federal Rules were designed to prevent. Although Exhibits I and J contain information that is essentially undisputed, Exhibit L is particularly damaging to plaintiff's case because it contains information indicating that an official investigation had been conducted and that plaintiff's negligence was the cause. By failing to provide this document in the course of discovery, defendant denied plaintiff the opportunity to present his case in a manner which allowed him to preserve his credibility. The preservation of plaintiff's credibility was particularly crucial in the

present case. There were no eyewitnesses to the accident, and, consequently, plaintiff could not prevail unless the jury was willing to believe his rendition of the relevant facts.

Moreover, the caboose maintenance records were a crucial element of plaintiff's negligence claim. Under the FELA, ·

> liability for negligence attaches if the railroad "knew, or by the exercise of due care should have known" of the danger or risk to an employee. *Urie v. Thompson,* 337 U.S. 163, 178, 69 S.Ct. 1018, [1028], 93 L.Ed. 1282 (1948) [1949]. The applicable standard or test for negligence under this statute ... is simply the failure to use ordinary care under the circumstances in the management of the railroad's affairs.

*Patterson v. Norfolk & Western Ry.,* 489 F.2d 303, 305 (6th Cir.1973). *See Padgett v. Southern Ry.,* 396 F.2d 303 (6th Cir. 1968); *Bridger v. Union Ry.,* 355 F.2d 382 (6th Cir.1966).

The evidence produced at trial indicates that the caboose in question was sixty-four years old at the time of the incident in which plaintiff was injured. In our view, examination of the maintenance records would be essential in preparing plaintiff's case, as these records would establish whether the angle cock had malfunctioned in the past, whether defendant had notice of a dangerous condition, and whether defendant acted reasonably in leaving the car in service.

Under circumstances such as these, we cannot conclude that plaintiff was not prejudiced. Defendant engaged in a systematic course of dilatory conduct which clearly deprived plaintiff of the opportunity to develop the facts necessary to support his case. This court will not sanction such conduct:

> The procedure followed ... did not comport with the broad purpose of our discovery rules in encouraging and demanding that the parties disclose and supply relevant evidence upon proper request. A full, free and open disclosure of relevant facts which would expedite and pro-

mote the resolution of the disputed factual issues did not prevail in this case.

> We think neither the letter nor the spirit of the federal disclosure rules was satisfied.... [The records in question] should have been disclosed to the [plaintiff] a reasonable time prior to the trial.... Failure to do so prejudiced the [plaintiff] and warrants a new trial.

*Greyhound Lines, Inc. v. Miller,* 402 F.2d 134, 144 (8th Cir.1968).

## III.

Accordingly, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for a new trial on the negligence claim, but we express no view on the merits of plaintiff's remaining claim under FELA. All costs are assessed against defendant.