936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John BARBERA, Plaintiff-Appellant,
v.
CITY OF ST. CLAIR SHORES, Robert Maul and Howard Isham,
Jointly and Severally, Defendants-Appellees.
 No. 89-2350.
 United States Court of Appeals, Sixth Circuit.
 June 26, 1991.
 
 Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 John Barbera filed this 42 U.S.C. Sec. 1983 action against the defendants, stemming from his trial and acquittal on charges of fourth degree sexual assault. He alleges that the defendant police officers performed a grossly negligent investigation and that the city failed adequately to train the defendants. The judge directed a verdict in favor of the defendants and we now affirm.
 
 
 2
 * In the course of a trial that lasted over two weeks, Barbera presented a large volume of evidence, some of which is relevant to the resolving this dispute. John Barbera taught science and math at the South Lake Public School system, located in St. Clair Shores, Michigan, where he formerly resided. Over the years, Barbera has had several contacts with the police. In the early 1970s, Barbera and his wife, who are white, adopted two black children. This evidently led to animosity between Barbera and some members of the St. Clair Shores community. Early in 1971, Barbera was harassed, and his house was vandalized. Barbera believed that the St. Clair Shores Police were unwilling to act to catch and punish the miscreants. Consequently, Barbera and his family moved from St. Clair Shores, though he continued to work at the school.
 
 
 3
 Another incident took place in 1974. At that time, Barbera moonlighted as a security guard. As a part of his job, he was required to carry a gun in certain situations. Two officers, neither of whom is involved in this suit, arrested Barbera for having a concealed weapon, despite the fact that he was licensed to carry a concealed weapon. He spent the night in jail and was subsequently charged with, but not convicted of, a firearms offense.
 
 
 4
 The next incident took place in 1978. Barbera began receiving a series of notes suggesting that he was in the midst of an affair with a particular female student. He brought the notes to the attention of the school principal, who contacted the police. The girl with whom he was supposedly involved also claimed to be receiving notes, and she also claimed at one point that someone tried to break into her house. Barbera testified that Officer Maul, of the St. Clair Shores Police Department, was somehow involved in the police investigation, but the extent or nature of his involvement was not apparent from the record. At one point, a police car kept a watch on Barbera's house, but nobody took any enforcement action against Barbera. It eventually turned out that the girl was sending the notes herself.
 
 
 5
 Officer Maul was unreceptive to information provided by the plaintiff in connection with his official duties. In one incident, a shop teacher had his jacket stolen. Officer Maul caught the student, who was prosecuted. Barbera had what he believed to be relevant information, and he offered that information to Officer Maul. Maul told him to "bug out." On another occasion, a male student was accused of touching a female student in an inappropriate manner. Barbera told Maul that the student was outside, on the playground with him. Maul responded by telling Barbera that when he needed help with the investigation, he would ask for it. Maul had a similar reaction when Barbera offered information regarding allegations of sexual misconduct against another teacher, again in the late 1970s.
 
 
 6
 In April 1984, a student, W.D.,[1] made some serious allegations against the plaintiff. W.D. was a male student in Barbera's eighth grade science class. He also attended special education classes for "emotionally impaired" children. He was not doing well in the plaintiff's class--he was receiving a failing grade. According to Barbera, W.D. tended to tell stories about other persons that were not true. During a dispute between them, Barbera, who was seated at his desk, reached out and pushed W.D. away from him. Barbera testified that he reached out with his open palm and pushed W.D. in the abdomen, above the belt. W.D. reported this incident to school authorities, but in a somewhat different fashion. He accused the plaintiff of attempting to grab his testicles.
 
 
 7
 Robert Maul investigated the incident. Maul formed the belief that there was some truth to these allegations, though the plaintiff claims that Maul could only have done so if he was already biased against the plaintiff. Maul asked the district attorney to prosecute, but, based on the available evidence, the district attorney refused to do so. At the district attorney's suggestion, Maul contacted the city attorney regarding the possibility of prosecuting Barbera for misdemeanor assault. The city attorney, like the district attorney, refused to do so. The W.D. incident was, therefore, closed.
 
 
 8
 The plaintiff tells us that the investigation of this incident caused some friction between the defendant Maul and members of the local school community. Evidently, there was some sort of agreement that Maul would not participate in any other investigations of sexual misconduct on the part of teachers.
 
 
 9
 Barbera is not claiming in this lawsuit that there was a pattern of harassment. Instead, he uses the prior incidents to bolster his claim that the police failed adequately to investigate the charge at issue here. All of the prior incidents lurk in the background of the incident directly at issue here. Another male student accused Barbera of sexual misconduct, and this accusation resulted in an actual prosecution. Barbera was found not guilty. He now claims that the defendants Maul and Isham were grossly negligent in their investigation of the incident.
 
 
 10
 F.L., then an eighth grader, was a student in the plaintiff's class. It was he who made the accusations that resulted in the plaintiff's criminal trial. F.L. said that, from the beginning of the school year, Barbera had looked at him in a manner that made him feel "uncomfortable." In addition to creepy looks, F.L. reported two incidents that formed the basis for the prosecution. These two incidents are referred to by the parties as the "groin-grabbing incident" and the "leg-rubbing incident."
 
 
 11
 The groin-grabbing incident allegedly took place in early November 1985.[2] During this class period, the students had been assigned work to complete at their seats, working independently. According to F.L., he approached Barbera, who was seated at his desk in the front of the room, in order to ask him a question regarding math. F.L. stood to the left of Barbera's desk, waiting for him to finish assisting another student, who was standing to the right. F.L. picked up a sheet of paper from Barbera's desk and began looking at it. F.L. claims that Barbera grabbed him, using the left hand, in his groin area ("his privates"). F.L. jumped back, and Barbera, who had a smile on his face, let go. Barbera denies that the groin-grabbing incident ever took place. Barbera claims that his desk is constructed in such a way that the incident, as described by F.L., was a physical impossibility.
 
 
 12
 The second incident is the "leg-rubbing" incident. There is no factual dispute that the plaintiff did make physical contact with F.L.'s leg, though the parties choose to characterize it in quite different terms. F.L. came to class one day with his pants ("jogging pants") rolled up and his socks rolled down. Some of the girls in the class began teasing F.L. in a typical adolescent style (e.g., "ooh--look at those sexy legs"). Prior to the start of class, Barbera approached F.L., who had already taken his seat, and touched his leg in some fashion. The exact nature of this touching is not clear--Barbera says that he "brushed" F.L.'s leg, while F.L. claimed that Barbera "stroked" his leg. Barbera then said (in what he claims was a sarcastic tone) "what sexy legs." According to Barbera, everyone in the class laughed, and Barbera then called the class to order by clapping his hands, after which he commenced teaching the lesson. F.L. had a somewhat different account of the incident. F.L. claimed that Barbera also said that he had "nice baby blue eyes" and that, given an hour, Barbera could make him feel better. Barbera emphatically denies that he made these comments, and they were not corroborated by F.L.'s classmates.
 
 
 13
 F.L. first reported the leg-rubbing incident to a school guidance counselor. The guidance counselor turned matters over to the school principal, who discussed the matter with F.L. and then held a meeting attended by both Barbera and F.L. It was at this meeting that F.L. first made the groin-grabbing allegation. The principal contacted the liaison between the school and the police, Robert Maul, for further investigation.
 
 
 14
 Barbera's specific complaints arise out of the investigation of the incidents by the police. Maul initially investigated F.L.'s allegations. Subsequently, however, he handed over the investigation to the defendant Isham, another officer on the St. Clair Shores Police Department, probably pursuant to his agreement at the time of the W.D. incident to eschew participation in the investigation of sexual assault allegations against teachers. The plaintiff lists eighteen steps that he believes were utterly essential to an effective investigation and which were not carried out by the defendants.[3] The basic thrust of his argument is that no sane person could, after a full investigation, believe that Barbera was guilty. Thus, Barbera contends that the decision to prosecute him arose out of the willful failure on the part of the officers involved fully to investigate the charges against him. Barbera concedes that a prosecutor, not the defendants, made the decision to charge him and the decision to go to trial, but he argues that the prosecutor relied on the evidence provided by the police.
 
 II
 
 15
 A court may grant a directed verdict only when, without weighing the credibility of the witnesses, the evidence leads to only one reasonable conclusion. Erskine v. Consolidated Rail Corporation, 814 F.2d 266, 269 (6th Cir.1987). Accordingly, we look at all evidence in the light most favorable to the plaintiff, and give him the benefit of all reasonable inferences. The plaintiff bases his substantive due process claim on Nishiyama v. Dickson County, Tennessee, 814 F.2d 277 (6th Cir.1987) (en banc ). Nishiyama allows a plaintiff to recover only in "outrageous cases of 'gross' negligence." Brandenburg v. Cureton, 882 F.2d 211, 214 (6th Cir.1989). We are of the view that, no matter how it is sliced, the evidence in this case states only an action for mere negligence.
 
 
 16
 The plaintiff claims that the police were pursuing some sort of "vendetta" against him. This claim is utterly without support in the record. There was no evidence tying Maul or Isham to the prior incidents in which Barbera had difficulties with the St. Clair Shores Police Department. Indeed, there was no evidence that the defendants even knew of the prior contacts. The evidence of Barbera's contacts with Maul demonstrate at most that Maul disliked Barbera. The jury might also have inferred that Maul was a jerk, but being a jerk does not violate Sec. 1983. If it did, the governmental coffers would be even less full than they currently are.
 
 
 17
 Nor was recommending that Barbera be prosecuted per se unreasonable. Stroking a student's legs before class may not have been criminal, but it was certainly questionable behavior for a teacher. The groin-grabbing incident may or may not have occurred, but there were several witnesses who maintained that it did. While the defendants' investigation of this case may not have been exemplary, it did not violate the plaintiff's constitutional rights.[4] We believe that the defects in the investigation are analogous to the "poor tactical preparation" that we found insufficient to state a cause of action in Brandenburg. Id. at 214.
 
 III
 
 18
 The decision of the district court granting the defendants' motion for a directed verdict is AFFIRMED.
 
 
 
 [1]
 In the interest of privacy, we refer to the students by their initials rather than their names
 
 
 [2]
 There is some confusion as to when the incident allegedly took place. Several of the students who allegedly witnessed the incident all gave the same date for the incident. There is a discrepancy, however, in that Barbera was not even in school on that date. Barbera argues that, while junior high school students might get the date wrong, it is unlikely that they would all choose the same wrong date. Thus, he believes that this is evidence that there was a joint effort to fabricate the whole incident. While one could make such an inference, we do not believe that Sec. 1983 requires a detective to come to any particular conclusion in an investigation
 
 
 [3]
 We do not sit as a review board empowered to evaluate police procedures for their efficacy. Some of the steps suggested by the plaintiff might have led to a better investigation--e.g., interviewing all of the students in the plaintiff's class or measuring the plaintiff's desk to see if it was possible for him to commit the act as described by F.L. Nonetheless, the plaintiff also relies on a number of myths that victims of sexual assaults must commonly face. For example, he finds it highly significant that F.L. did not immediately report the groin-grabbing incident. Perhaps he feared retribution, or feared being stigmatized, or feared that he would not be believed. We refuse to countenance the use of such prejudices. In any event, it is sufficient that reasonable persons might differ on the import of the various pieces of evidence
 
 
 [4]
 The plaintiff also complains that Isham and Maul testified at the trial of this case that they still believed that he was guilty of the offense. Isham and Maul are free to believe whatever they want