45 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Carolyn Sue COPEN, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
Michael HOUSE, individually and in his official capacity as
Superintendent of the Pruntytown Correctional Center;
Ronald O. Gregory, in his official capacity as Commissioner
of the West Virginia Division of Corrections; Joseph Skaff,
Major General, in his official capacity as Secretary of the
West Virginia Department of Public Safety; Gaston Caperton,
individually, Defendants-Appellees,
and
Frank Phares, individually and in his official capacity as
Deputy Superintendent of the Pruntytown
Correctional Center, Defendant.
 No. 93-7175.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 27, 1994.
Decided: Dec. 30, 1994.
 
 Appeal from the United States District Court
 ARGUED: Barbara E. Fleischauer, Morgantown, W VA, for Appellant. David Paul Cleek, Charleston, W VA; Donald L. Darling, Senior Deputy Attorney General, WEST VIRGINIA ATTORNEY GENERAL'S OFFICE, Charleston, W VA, for Appellees.
 N.D.W.Va.
 AFFIRMED.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant is a correctional center inmate who alleged that she was beaten by the superintendent of the prison in which she was confined, and brought an action against prison officials claiming violations of her civil rights. Plaintiff requested two documents during pre-trial discovery, which were not turned over by the defendants until immediately before trial and which plaintiff's counsel did not receive until the second day of trial. In addition, several pieces of evidence which the plaintiff wished to admit during trial were excluded by the district judge. The trial led to summary judgment or directed verdicts for all defendants save one. A jury verdict was rendered in favor of the remaining defendant after a five-day trial. Plaintiff has appealed the district judge's rulings, claiming that she was unfairly prejudiced by receiving documents so late in the litigation and by the redaction of certain portions of the documents by the court.
 
 I.
 
 2
 The appellant, Carolyn Copen, first entered the Pruntytown Correctional Facility on January 4, 1989, suffering from numerous medical problems: she was overweight, took several prescription medications, she was epileptic, and she used a back brace. After returning from a disciplinary hearing on June 10, 1989, she refused to go back to her segregation cell, complaining that the room was hot and very small, had sewage bubbling up through a pipe in the floor emitting a urine smell, and that there was no ventilation.
 
 
 3
 Copen demonstrated her resistance to being returned to her cell by wrapping her arms and legs around a railing. Three female officers pried her loose, put handcuffs on her, and carried her to the segregation cell. She was placed on the bed in the cell and the officers locked the door. The officers had called for backup and the appellee, Michael House, superintendent of the Pruntytown Correctional Center, came to the scene. According to Copen's allegations, House ordered someone to open the door of the cell, entered the cell very angry, grabbed her, and hit her several times with his fist. House denied that the beating occurred.
 
 
 4
 Copen filed a class suit on February 1, 1991 for injunctive and monetary relief for violations of her civil rights. Several changes were made in the prison facility after she filed the action. She therefore amended her complaint, removing the claim for class action status, and sought relief for the alleged beatings to which she was subjected; poor conditions in her segregation unit; an inadequate law library; the revocation of her work release; and inadequate maintenance of not guilty determinations in her file.
 
 
 5
 The trial took place from May 18 to May 22, 1992. Summary judgment and directed verdicts were granted to all but one of the defen dants involved in the suit on various aspects of the complaint.[1] The only remaining defendant in the case by the end of the five-day trial was House, who received a jury verdict in his favor. Partial injunctive relief was ordered on May 4, 1993, regarding the law library and the maintenance of Copen's file.
 
 
 6
 At issue on appeal are two documents which Copen sought to obtain before trial. She made discovery requests of the defendants, asking to receive the Stuart Memorandum (by reference) and the Holland Report (by name). The Stuart Memorandum is a memorandum from Rita A. Stuart, Assistant Attorney General of West Virginia, to Major General Skaff, Secretary of the Department of Public Safety, and Ronald O. Gregory, Commissioner of the West Virginia Division of Corrections, reporting her findings on programs at the correctional facility and on complaints of physical and mental abuse. The Holland Report is a report by Manfred Holland, the Director of Corrections Management, to Ronald O. Gregory, on the allegations of misconduct and mismanagement of defendant House.
 
 
 7
 After several attempts by the plaintiff to obtain copies of those two documents, and several objections and motions for protective orders by the defendants, the district judge affirmed the magistrate judge's ruling ordering defendant Gregory to produce copies of the Holland Report out of which certain portions would be redacted by the court. The defendants produced copies of the Holland Report and the Stuart Memorandum three days before trial. Copen's attorney, however, first received those copies on the second day of trial, May 19, 1992, after the district court had excised portions. Following the jury verdict for House, Copen filed a motion on May 17, 1993 to alter and amend the judgment based on the disciplinary and work release issues and for a new trial on damages. The motions were denied on September 21, 1993, and Copen has appealed. She has alleged specifically that she was prejudiced by the lateness in the production of certain documents, the denial of some discovery, and by the exclusion of evidence at trial.
 
 II.
 
 8
 A trial court may overturn a jury verdict and grant a new trial only if the verdict is "against the clear weight of the evidence or is the result of prejudice or some other improper consideration." Willis v. Raymark Industries, Inc., 905 F.2d 793, 798 (4th Cir.1990). The denial of a new trial after a jury verdict has been rendered is subject to review under an abuse of discretion standard. Id. ; Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir.1988). The district judge's decisions regarding discovery and admission of evidence are also reviewed under an abuse of discretion standard. See Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir.1992); Cohn v. Bond, 953 F.2d 154, 157 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3057 (1992).
 
 A.
 
 9
 We turn first to the issue of the late production of the Holland Report and the Stuart Memorandum. Copen requested those documents from defendants Skaff and Gregory in a deposition subpoena on February 27, 1991, twenty-six days after filing her complaint in the district court. The recipients of the subpoena filed for a protective order under Fed.R.Civ.P. 26(b) and filed a motion to quash her subpoena duces tecum under Fed.R.Civ.P. 45(b) on April 1, 1991, stating that the requests were overbroad and that the subpoenas were unreasonable and oppressive. They also stated that the reports constituted work product and were immune from discovery. House also filed for a protective order concerning the Holland Report and filed to quash the subpoena. Discovery depositions were stayed pending a hearing on transferring the case from the Southern to the Northern District of West Virginia, which occurred on April 10, 1991.
 
 
 10
 The reports were again sought in a request for production of documents directed to defendant Gregory on October 8, 1991, and Gregory filed another motion for a protective order on November 7, 1991 and a motion that the request for production of documents be denied. The magistrate judge denied Gregory's request for a protective order on December 12, 1991, and Gregory filed an objection to the magistrate judge's ruling. On March 16, 1992, after an amended scheduling order was filed by the court, Copen asked for the earliest possible resolution of the conflict concerning the document production.
 
 
 11
 On May 15, 1992, the Friday before the Monday May 18 start of the trial, the district judge issued an order affirming the magistrate judge's ruling denying Gregory's motion for a protective order regarding the Holland Report. However, the court ruled that only portions of the report having to do with allegations in the amended complaint would be made available. The defendants produced the Holland Report and the Stuart Memorandum. The district court consequently was in possession of the documents on May 18, 1992, but did not finish redacting them until the second day of trial, at which time they were given to Copen and House.
 
 
 12
 On the same day that the parties were given redacted versions of the two reports, the district court issued a protective order as to portions of both documents that it ruled were not admissible, and placed them under seal. The district judge excised two major portions from the reports. The first concerned an investigation into allegations by two inmates who had escaped from the correctional center in September 1990, that they had been physically abused by House. The second subject which was taken out of the report involved House's relationship with and favorable treatment of a certain female inmate at the facility.
 
 
 13
 Copen has claimed that her case was unduly prejudiced by her inability to pursue certain lines of investigation due to the late date at which the reports were turned over to her. After she reviewed the reports on the second day of trial and found the names of the two inmates who alleged that they had been abused by House, she petitioned for writs of habeas corpus ad testificandum to permit the two to testify. The writs were denied by the district judge.
 
 
 14
 In a case similar to the one at hand, we held that, even if the appellants were entitled to receive certain documents which appellees did not deliver, they had failed to show that they were prejudiced by appellee's late production of the documents. DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512 (4th Cir.1985). In DeBenedetto, the appellants alleged that they were denied a fair trial because the appellee failed to produce a document which would have helped them to prove a manufacturing defect and also would have led them to other documents relevant to their case. The court ruled that it was not entirely clear that the document was included in the discovery requests and that, even if it had been, plaintiffs had not shown that they were prejudiced by its late production. The court pointed out that the appellants eventually obtained access to the document through their own expert witness, whom they had retained more than three years prior to trial and who apparently had possession of the document well before trial. Appellants were also able to use the document extensively at trial once they found out about it. In addition, "appellants did not exercise those options which were available to ameliorate any unfair surprise resulting from the appearance of this document. Appellants could have moved for continuance or sought a recess to conduct discovery on the document before the trial continued." Id. at 518.
 
 
 15
 Copen, the appellant in the instant case, correctly has pointed out that one of the purposes of the discovery process under the Federal Rules of Civil Procedure is to eliminate surprise. See Erskine v. Consolidated Rail Corp., 814 F.2d 266, 272 (6th Cir.1987). However, there was no undue surprise or prejudice in the instant case. The appellant already knew about the Holland Report on February 27, 1991, when she first requested the document by name in her deposition subpoena. Her counsel admitted, referring to the other inmates who had allegedly been beaten, that "[W]e had heard the rumors about them. No one that we talked to could remember their names."[2] Copen apparently did not investigate court records or pursue any other avenues for obtaining the identity information. In addition, where Copen stated in her Response to Amended Scheduling Order on March 16, 1992 that she would like a ruling on the reports, she also wrote, "The plaintiff has not yet seen the report and after reviewing the report it could, though it is not likely, require plaintiff to pursue additional discovery." House has pointed out that in the six months after the defendants' first motion for a protective order on April 1, 1991, the appellant made no attempt to gain a ruling from the Southern District or the Northern District. It is also unlikely that she was prejudiced by the failure to produce the documents until the second day of trial, since the district judge refused to allow testimony by the witnesses whose names were in the report concerning the other alleged beatings.
 
 
 16
 In addition, Copen failed to move for a continuance or recess after being presented with the documents on the second day of trial. Although she requested "a little leeway" from the trial court, she stated that in light of the district judge's desire to start the trial at 9:00 a.m., "there would have been no point ... to request a continuance.... Thus, it was obvious that any motion for a continuance or recess would have been futile."[3] A formal motion to the judge would not necessarily have been futile. As the court in DeBenedetto stated, where counsel decided not to move for a continuance but rather to proceed with the trial, "[t]hey cannot now be allowed to alter retroactively their trial strategy." DeBenedetto, 754 F.2d at 518. The same reasoning applies in the instant case. To make an effective attempt for delay, she should have moved for a continuance or recess.
 
 
 17
 Copen has also attempted to establish misconduct on the part of the defendants in turning over the documents. She has relied on the case of Erskine v. Consolidated Rail Corp., 814 F.2d 266 (6th Cir.1987). In Erskine, the court stated that it could not conclude that the plaintiff was not prejudiced by the defendant's failure to turn over certain documents pursuant to discovery requests. The court found that the defendant had not been completely honest in answering plaintiff's discovery requests, and that the documents that were not produced involved crucial elements of plaintiff's claim. "Defendant engaged in a systematic course of dilatory conduct which clearly deprived plaintiff of the opportunity to develop the facts necessary to support his case. This court will not sanction such conduct...." Id. at 273; see also Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir.1994) (a new trial was necessary where party's behavior in not turning over discovery documents in its possession, whether intentional or accidental, constituted misconduct).
 
 
 18
 In the instant case, however, the appellees have not been dishonest in answering Copen's requests. When she requested certain documents, the defendants pursued permissible channels, such as moving for protective orders, to prevent the documents from being released. The defendants were not untruthful and did not contend that the documents did not exist. The time between the plaintiff's response to the amended scheduling order and the trial court's ruling on the protective orders was certainly not the fault of House, the defendant, and was not so long as to be unreasonable.
 
 
 19
 We find that Copen was not unduly prejudiced by the failure to receive the Holland Report and the Stuart Memorandum until the second day of trial.
 
 B.
 
 20
 Copen has also claimed that she was prejudiced by not being able to introduce as evidence the excised portions of the Holland Report and the Stuart Memorandum, and by not being allowed to present witnesses who could testify to the information contained therein concerning the alleged beatings by House of two other prison inmates. If the judge had allowed her to call the other two inmates mentioned in the documents to testify, Copen's claim that she was prejudiced by the late production of the Holland Report and the Stuart Memorandum would be more compelling.
 
 
 21
 Copen's argument at trial was that the testimony of the two inmates should have been admissible as evidence of House's practice of physically abusing inmates under Fed.R.Evid. 406 ("Habit; Routine Practice"). On appeal, however, she has argued that the testimony and the excised portions of the reports relating to the alleged incidents should have been allowed under Fed.R.Evid. 404(b). That rule states:
 
 
 22
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 23
 We have held that Rule 404(b) is an "inclusionary rule." Morgan v. Foretich, 846 F.2d 941, 944 (4th Cir.1988). In Morgan, the plaintiffs alleged that a girl, Hilary Foretich, had been sexually abused by her father. They attempted to introduce evidence that Hilary's sister showed signs of sexual abuse similar to Hilary's. We held that the district court had abused its discretion by prohibiting introduction of such evidence, stating that the evidence went "not to the character of the accused but rather to essential issues on trial and [ ] was highly probative of the defendants' guilt...." Id. at 945. We also stated that:
 
 
 24
 the possible prejudicial effect of evidence can require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.
 
 
 25
 Id. (internal quotation omitted).
 
 
 26
 Copen has claimed that the evidence is relevant to House's intent, lack of mistake, and to negate testimony involving the origin of her injuries. She has urged that the evidence "could have been highly probative of defendant House's state of mind." To bolster her point, she has cited cases involving child abuse and infanticide in which evidence was admitted largely because it was the only evidence available to prove the incidents. See, e.g., Morgan, 846 F.2d at 944-45 (citing United States v. Woods, 484 F.2d 127 (4th Cir.1973), cert. denied, 415 U.S. 979 (1974)). House, however, has pointed out that Copen called six witnesses who alleged to have heard or witnessed her beating or bruising, and he himself called eight witnesses who testified that they saw her soon after the alleged incident. Thus, in contrast to the cited cases involving child abuse, evidence which Copen sought to admit was not the only evidence available to her.
 
 
 27
 After a determination is made by the court that the proffered evidence is relevant to something other than character under Fed.R.Evid. 404(b), the court must evaluate whether the probative value of the evidence is substantially outweighed by its prejudicial effect. United States v. McLamb, 985 F.2d 1284, 1290 (4th Cir.1993); United States v. Sanders, 964 F.2d 295, 299 n. 4 (4th Cir.1992); United States v. Lewis, 780 F.2d 1140, 1142 (4th Cir.1986). The district court determined that the alleged instances of abuse in the Holland Report and the Stuart Memorandum were "too remote" from the incident of alleged abuse in the instant case. See Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").
 
 
 28
 The beatings reported in the two documents occurred approximately fifteen months after the incident involving the appellant. The district judge did not abuse his discretion in determining that the evidence would be unduly prejudicial to the defendant in light of the amount of time between Copen's alleged beating and those of the other two inmates mentioned in the report. "The impact of the time differential is within the district court's discretion." United States v. Hadaway, 681 F.2d 214, 218 (4th Cir.1982). The district judge thus did not abuse his discretion in redacting those portions of the reports relating the other alleged incidents of abuse, and ruling that the victims could not testify.
 
 C.
 
 29
 Included in the Holland Report and the Stuart Memorandum were also accounts of House's romantic relationship with a female inmate. Those portions were excised from the report and testimony on the issue was prohibited. Copen wished to show that because she and the other inmate had "significant disagreements," and House was involved with that inmate, House had a motive for beating her. The district court excluded the evidence on two grounds: 1) there were no allegations of retaliation or favoritism in the amended complaint or pretrial order, and 2) the allegations of favoritism and retaliation were attenuated and there was nothing "beyond conjecture" to show their connection to the alleged beating. The district judge stated that after applying Fed.R.Evid. 404(b), he still had to decide whether, under Fed.R.Evid. 403, the probative value substantially outweighed the danger of unfair prejudice. He found that "looking at this from a balancing test, that the danger of unfair prejudice, confusion of the issues, misleading of the jury, would substantially outweigh any probative value of this retaliation or favoritism evidence."
 
 
 30
 Copen proffered evidence showing House's liking for the female inmate, and said that the Holland Report would substantiate those allegations. However, besides an allegation that the inmate and Copen had one serious argument, she did not otherwise show the connection between the beating incident and House's relationship with the other inmate. It was within the district judge's discretion to find the testimony and portions of the Holland Report going to defendant House's relationship with the female inmate unduly misleading and confusing and to deny introduction of the evidence concerning their relationship.
 
 III.
 
 31
 In their briefs, both parties discuss a cross-appeal. However, since no notice was filed by the appellee, we will not address the issues raised on cross-appeal.
 
 Accordingly, the judgment is
 
 32
 AFFIRMED.
 
 
 
 [1]
 The other defendants were Franklin D. Phares, Deputy Superintendent of the Pruntytown Correctional Center; Ronald O. Gregory, Commissioner of the West Virginia Division of Corrections; Major General Joseph J. Skaff, Secretary of the West Virginia Department of Public Safety; Gaston Caperton, Governor of West Virginia; and Nicholas Hun, Commissioner of the West Virginia Division of Corrections
 
 
 [2]
 As to Copen's access to the names of the two individuals, House's counsel also pointed out at trial that both of those men sued the Division of Corrections for the alleged beatings. One case was dismissed and the other was being litigated at the time of the instant trial. House mentioned the information to show that the other beatings had not been proven, but his point also went to the issue of whether the appellant could have found out the names of the individuals other than by obtaining the reports in question
 
 
 [3]
 Copen has contended that her request for "a little leeway" was equivalent to a motion for a continuance