UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LAW ENFORCEMENT ALLIANCE OF
AMERICA, INCORPORATED,
　　　　　　　*Plaintiff-Appellant,*

v.

USA DIRECT, INCORPORATED,
　　　　　　　*Defendant-Appellee.*

No. 02-1715

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-01-930-A)

Argued: January 24, 2003

Decided: March 14, 2003

Before WILLIAMS and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

---

## COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, for Appellant.
John Hardin Young, SANDLER, REIFF & YOUNG, P.C., Washing-
ton, D.C., for Appellee. **ON BRIEF:** Joseph E. Sandler, SANDLER,
REIFF & YOUNG, P.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Law Enforcement Alliance of America, Inc. (LEAA), appeals (1) the district court's grant of summary judgment to U.S.A. Direct, Inc. (USAD), on LEAA's claim that USAD breached an implied in fact agreement by failing to guarantee payment of $25,000 per month to LEAA for the months of April 2001 through September 2001; (2) the district court's grant of summary judgment to USAD on USAD's counterclaim that it is entitled to $107,295.46 in unpaid invoices, plus finance charges, for direct mail services that USAD provided to LEAA; and (3) the district court's upholding of the magistrate judge's award of discovery sanctions against LEAA under Rule 37 of the Federal Rules of Civil Procedure for abuse of the discovery process. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

I.

In 1993, USAD, a Pennsylvania corporation, began providing direct mail services for LEAA, a Virginia corporation.[1] The direct mail services in this case involved raising funds for LEAA by soliciting new memberships and membership renewals. LEAA participated in designing mailings that USAD then printed and mailed to the addresses on a mailing list provided by LEAA. When the recipients mailed in their membership dues, an escrow agent collected the mail and deposited the funds into an escrow account. After USAD provided the direct mail services, it would send an invoice to LEAA, and then USAD would be paid out of the funds in the escrow account. The

---

[1]Because this appeal comes to us from the district court's grant of summary judgment on USAD's motion, we view the evidence in the light most favorable to LEAA, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

parties entered into an agreement with Washington Intelligence Bureau, Inc. (WIB) establishing WIB as the escrow agent who would hold funds raised through USAD's direct mail services (1993 Agreement). Although, by its terms, the 1993 Agreement stated that it would be in force from March 1, 1993 to January 1, 1995, the parties continued using WIB as an escrow agent until early 2001. In June 1995, at the request of USAD, LEAA completed and signed a credit application (1995 Credit Application), wherein LEAA agreed to the following terms: "Our *Terms* are *Net Due Upon Receipt*. A finance charge of eighteen (18%) percent will be applied to all balances outstanding over thirty (30) days." (J.A. at 15-16.) The 1995 Credit Application contained no expiration date.

In October 1997, USAD and LEAA entered into another agreement (1997 Agreement), which expressly incorporated terms "comparable to the arrangement [the parties had] worked under since 1995." (J.A. at 24.) The parties agreed to continue using the escrow mechanism and that funds from the escrow account would be distributed as follows: LEAA would receive $20,000 per month,[2] then USAD would be paid the amount due on outstanding invoices, and LEAA would receive any remaining funds.

By its terms, the 1997 Agreement ended in September 2000,[3] although the parties continued their business relationship through January 2001, unaware that the agreement had ended. When USAD realized that the 1997 Agreement had expired, it notified LEAA by proffering a new agreement that proposed to modify some the terms of the 1997 Agreement and to lower LEAA's monthly draws to $16,250 per month (2001 Proposed Agreement). LEAA rejected the

---

[2]On January 7, 1999, both parties agreed in writing to amend the 1997 Agreement to increase the monthly amount LEAA received from the escrow account from $20,000 per month to $25,000 per month.

[3]The 1997 Agreement specifically states, "The term of this agreement shall be three years beginning October 1, 1997 and extending until September 1, 2000." (J.A. at 25 ¶ 6.) The parties dispute whether the 1997 Agreement terminated on September 1, 2000, or September 30, 2000. Viewing the evidence and inferences in the light most favorable to LEAA, we assume that the 1997 Agreement terminated on September 30, 2000.

2001 Proposed Agreement and did not make a counter-offer. Without any contract or agreement, all services occurring after January 31, 2001, were provided by USAD on a pre-paid, "pay as you go," basis. LEAA received $25,000 per month from the escrow account from September 2000 through January 2001, $23,000 in February 2001, and nothing in March 2001. USAD performed no more direct mail services for LEAA and, on April 26, 2001, LEAA withdrew the remaining balance of approximately $80,000 from the escrow account.

In May 2001, LEAA filed a Motion for Judgment in Virginia Circuit Court alleging that, although the 1997 Agreement expired in September 2000, there was an implied in fact contract that continued the 1997 Agreement relationship between the parties until October 2001 and that LEAA was entitled to the $25,000 per month it would have received from the escrow account for the months of April through October. USAD removed the case to federal court based on diversity jurisdiction and counterclaimed for outstanding payments and finance charges due under seven invoices for direct mail services provided to LEAA, asserting theories of breach of contract, unjust enrichment, and quantum meruit. In the district court, LEAA conceded that it was not entitled to any funds for October 2001, and thus, that its total damage claim was $150,000, $25,000 per month from April through September 2001.

On December 28, 2001, USAD filed a motion for summary judgment with respect to LEAA's claim and USAD's counterclaims. Following this motion, LEAA belatedly produced four of the seven invoices relating to USAD's counterclaims, which LEAA had previously denied existed, and which it had failed to produce in both its mandatory disclosures and its responses to USAD's requests for production. The district court granted USAD's summary judgment motion on both LEAA's claim and USAD's counterclaim and granted USAD damages of $107,295.46, plus finance charges,[4] for the seven outstanding invoices, but denied USAD attorney's fees. USAD then moved for sanctions against LEAA for withholding the four invoices,

---

[4]The parties stipulated that the finance charges awarded by the district court on January 31, 2002, were $19,375, plus daily interest of $53.64 on and after February 1, 2002.

which a magistrate judge granted. After the district court affirmed the sanctions of $6,169 over LEAA's objections and entered a final summary judgment order, LEAA timely appealed. We first address LEAA's arguments regarding the district court's grant of summary judgment to USAD and then address the discovery sanctions.

## II.

We review a grant of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). In conducting this review, we apply the same legal standards as the district court. *Ramos v. S. Md. Elec. Coop., Inc.*, 996 F.2d 52, 53 (4th Cir. 1993). The district court should only grant a motion for summary judgment where there is no genuine dispute as to an issue of material fact, and the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party bearing the burden at trial must demonstrate that a triable issue of fact exists; it may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248.

## A.

On appeal, LEAA first contends that its "undisputed evidence demonstrate[s], from the conduct of the parties, that there was a meeting of the minds that the parties agreed to continue to operate under the terms of the 1997 Letter Agreement upon its expiration for a period of one year, beginning October 1, 2000 and expiring September 30, 2001." (Appellant's Br. at 10.) Thus, LEAA claims that the district court erred by granting USAD summary judgment because an implied in fact contract was formed between the parties, entitling LEAA to $25,000 per month from April 2001 through September 2001, for a total of $150,000.

Under Virginia law,

> A contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances . . . . A "contract implied in fact" presupposes an obligation arising from mutual agreement and intent to promise, which agree-

ment and promise have not been expressed in words, and it requires a meeting of the minds just as much as an express contract.

4A *Michie's Jurisprudence of Virginia and West Virginia*, Contracts, § 99 at 561 (footnotes omitted), *quoted in Commonwealth Biotechnologies, Inc. v. Va. Commonwealth Univ.*, 2002 WL 1426143, *4 (Va. Cir. Ct. 2002). At trial, LEAA would have had the burden of proof of establishing the implied in fact contract it alleged and its breach. *Dickerson v. Conklin*, 235 S.E.2d 450, 455 (Va. 1977). Because a "meeting of the minds is essential to the formation of a contract," *Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363, 365 (Va. 1993), to overcome a motion for summary judgment LEAA must present sufficient evidence to demonstrate a triable issue of fact as to whether there was a meeting of the minds. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (quoting Fed. R. Civ. P. 56(c))).

To show that there was meeting of the minds, LEAA exclusively relies on a conclusory assertion by its president that "[b]ased upon the actions of the parties through about January, 2001, there was mutual assent that the terms of the 1997 Letter Agreement, including the guaranteed $25,000/month, would continue for another year." (J.A. at 182.) Evidence presented in opposition to a motion for summary judgment, however, must be probative, not merely colorable, *Anderson*, 477 U.S. at 256-57, and cannot be merely "conclusory statements . . . without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998) ("Causey made conclusory statements that Montgomery treated him less favorably than younger black and white employees of similar rank. Causey's conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment."). LEAA's president's statement is nothing more than a conclusory assertion and is insufficient for a reasonable jury to infer that USAD intended to commit itself to performance of its obligations under the 1997 Agreement for one year beyond the express terms of that agreement. Moreover, LEAA's president's claim is contradicted by LEAA's concession that USAD unequivocally

informed LEAA in mid-January 2001 that the 1997 Agreement had expired, that a new written agreement was required, and that after February 2001 all direct mail services would be performed on a pre-paid basis. Without more, LEAA cannot sustain its burden of providing sufficient evidence of a triable issue of fact on its claim of an implied in fact contract.

Because LEAA has failed to provide sufficient evidence of a triable issue of fact about whether there was any meeting of the minds between it and USAD to extend the 1997 Agreement, the district court did not err in granting summary judgment in favor of USAD with respect to LEAA's claim alleging breach of an implied in fact contract.

## B.

LEAA next challenges the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for payment of seven unpaid invoices. Regarding six of the invoices (invoice numbers 6256, 6660, 6736, 6901, 6736-1, and 6441 (totaling $106,418.42)), there is no dispute that LEAA requested the services, that USAD provided the documented direct mail services to LEAA, and that LEAA accepted the services. LEAA argues that it does not owe USAD the outstanding balance on the invoices because, under the 1997 Agreement, USAD's invoices were to be paid out of money in the escrow account, and when the invoices were received, there was insufficient money in the escrow account to pay the invoices after paying LEAA's guaranteed $25,000 per month. The 1997 Agreement, however, did not apply to the disputed invoices because the 1997 Agreement expired by September 30, 2000, and the disputed invoices were all received after that date.[5] Moreover, as discussed in Section II.A above, there was no implied in fact contract that included the

---

[5]The 1997 Agreement expired by its express terms in September 2000, and nothing therein stated that any contract created under the 1997 Agreement would continue to be controlled by its terms after the agreement expired. Thus, because all the invoices at issue were received after the 1997 Agreement had expired, payment of the invoices is not controlled by the 1997 Agreement and need not come out of the escrow account.

terms of the 1997 Agreement. Accordingly, we affirm the district court's grant of summary judgment regarding invoices 6256, 6660, 6736, 6901, 6736-1, and 6441 requiring payment of $106,418.42 in damages.

Regarding the remaining unpaid invoice, invoice number 7650, LEAA maintains that, via email, it and USAD had previously agreed to a flat fee of $13,119.09 for the entire project, to be paid up front, and that it never agreed to pay anything above that fee. By email, LEAA requested "a bottom line, hard number total for the entire package" and inquired whether "$13,119.09 [would] get this package out the door . . ., as promised, without any 'additional charges' being assessed." (J.A. at 37-38.) In reply, USAD agreed that $13,119.09 would "get your package out the door" and explicitly stated, "No, to any additional charges, unless you request additional [data processing] work after the fact." (J.A. at 37.) LEAA then paid USAD $13,119.09; there is no evidence that LEAA requested any additional data processing work. USAD, however, characterizes its email as merely a cost estimate and claims that in order to be fully compensated for the actual cost of the project, USAD is entitled to an additional $877.04 due to the difference between the number of pieces covered in the original quotation and the number of pieces reflected in the final invoice.

Viewing the evidence in the light most favorable to LEAA, as we must, LEAA has provided sufficient evidence for a jury to find that the parties formed a contract whereby USAD agreed to perform the project in exchange for $13,119.09, to be paid up front. *See Marefield Meadows*, 427 S.E.2d at 366 ("This acceptance was unqualified and introduced no new terms. Thus, it meets the legal requirements for the creation of a contract through letters."). Accordingly, there is a genuine issue of material fact as to whether LEAA owes USAD any additional amount on invoice 7650, and the district court erred in granting summary judgment in favor of USAD with respect to that invoice. We reverse the district court's grant of summary judgment on this invoice and remand for further proceedings.

## C.

LEAA next challenges the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for $19,375 in

finance charges calculated on the unpaid invoices. As we reversed the district court's grant of summary judgment on invoice 7650, we reverse the grant of summary judgment on the finance charges for invoice 7650 as well.

With regard to the remaining six invoices, the district court granted summary judgment in favor of USAD because the invoices at issue explicitly stated, "NET DUE UPON RECEIPT," and noted that "[a] finance charge of 1.5% per month (18% annually) will be applied to all balances outstanding past the stated credit terms." (J.A. at 133-43.) USAD presented these invoices to LEAA after the services were performed. Nothing on the face of the invoices demonstrates that LEAA accepted the finance charge term, and USAD has presented no other evidence of acceptance. Accordingly, these invoices are insufficient to sustain USAD's burden of proof on LEAA's liability for finance charges. In reviewing the grant of summary judgment, however, we are not confined to the grounds relied on by the district court; we may affirm on any legal basis supported by the record. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

USAD submitted evidence with respect to invoices 6256, 6660, 6736, 6901, and 6736-1[6] that, prior to performing the services, USAD provided cost estimations to LEAA, which were subsequently approved by LEAA, that included a finance charge term stating: "Payment: Payment shall be based upon credit and terms approved by U.S.A. Direct, Inc. A finance charge of eighteen percent (18%) annually shall be imposed upon all overdue accounts." (J.A. at 147, 149, 151, 155, 157, 161, 165, 168, 172.) LEAA argues that, notwithstanding this language, the parties understood that no finance charges would apply. LEAA supports this claim by pointing to evidence in the record that demonstrates that finance charges were not applied under the 1997 Agreement and that when such finance charges appeared, USAD instructed LEAA to ignore them. The invoices at issue in this

---

[6]Invoices 6736 and 6736-1 are for services performed with regard to the same cost estimate. Invoice 6736-1 was merely a supplement to 6736 to charge for postage that was not reflected in invoice 6736. Because LEAA approved a cost estimation for this job, LEAA agreed to finance charges for the job, even though USAD chose to submit a separate invoice for the insufficient postage.

appeal, however, were not governed by the terms of the 1997 Agreement. Further, evidence of how the parties dealt with finance charges under their previous contract cannot be used to contradict the express terms of the contract created by LEAA's acceptance of the cost estimations. Course of dealing evidence, including evidence of course of performance under a prior contract,[7] may not be used where it is

---

[7]In Virginia, "course of dealing is a sequence of . . . conduct between the parties" prior to the formation of a contract, Va. Code Ann. § 8.1-205(1) (Michie 2001), while "course of performance" deals with actions between the parties after the formation of a contract, Va. Code Ann. § 8.2-208(1). Course of performance evidence from a prior contract is, logically, course of dealing evidence for a subsequent contract. In other words, the same actions might be a course of dealing for one contract and, at the same time, be a course of performance for another contract. In this case, how USAD and LEAA dealt with invoices under the 1997 Agreement would be course of performance evidence with regard to interpretation of the 1997 Agreement because the actions took place after USAD and LEAA entered into the 1997 Agreement and during the course of that agreement. The disputed invoices, however, were not governed by the 1997 Agreement. Any actions taken under the 1997 Agreement would be actions taken prior to the formation of any contract involving the disputed invoices and would be course of dealing evidence with regard to interpretation of the disputed invoices. As the express terms are inconsistent with the course of dealing evidence, the course of dealing evidence is excluded. *See Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 8-9 (4th Cir. 1971).

Although course of dealing and course of performance evidence only applies to the sale of goods under the Uniform Commercial Code, these provisions were enacted in Virginia in Article 1, the General Provisions. Accordingly, course of dealing and course of performance evidence is not limited merely to contracts for the sale of goods, but extends to all commercial contracts. *See Chas. H. Tompkins Co. v. Lumbermens Mut. Cas. Co.*, 732 F. Supp. 1368, 1374 n.7 (E.D. Va. 1990). Moreover, the Supreme Court of Virginia has cited an Article 2 provision regarding these concepts in a case involving a service contract. *See Doswell Ltd. P'ship v. Virginia Elec. and Power Co.*, 468 S.E.2d 84, 90 (Va. 1996) ("Evidence that contract phrases or terms have acquired, by custom in the locality, or by usage of the trade, a peculiar meaning not attached to them in their ordinary use is admissible even though the phrases or terms themselves are unambiguous. . . . *See* Code § 8.2-202(a) (terms in commercial sales agreements may be explained or supplemented by course of dealing or usage of trade evidence).").

inconsistent with express terms of a contract. *See* Va. Code Ann. § 8.1-205(4) (Michie 2001) ("The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade."); *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 9 (4th Cir. 1971) ("[E]vidence of usage of trade and course of dealing should be excluded whenever it cannot be reasonably construed as consistent with the terms of the contract."). Because USAD has presented uncontroverted evidence of a binding contract, namely, that it offered services to LEAA under cost estimations that included a finance charge term for invoices 6256, 6660, 6736, 6901, and 6736-1, that LEAA accepted and approved these cost estimations, and that USAD performed the services, the district court properly granted summary judgment in favor of USAD regarding these invoices.

With respect to invoice 6441, USAD has not put into evidence cost estimations approved by LEAA before the services were provided[8] and relies on the 1995 Credit Application and the invoices themselves to show that LEAA owes the finance charge. As discussed above, the finance charge term in the invoices is insufficient to support summary judgment for USAD. Although LEAA did agree to the 1995 Credit Application before USAD provided the services in the invoices at issue, and the 1995 Credit Application has not expired, LEAA has presented course of performance evidence[9] that USAD never claimed finance charges from LEAA for outstanding balances. Accordingly, there is a material question of fact as to whether USAD has waived its right to rely on the finance charge term in the 1995 Credit Application. *See John H. Maclin Peanut Co. v. Pretlow & Co.*, 11 S.E.2d 607,

---

[8]Although USAD claimed at oral argument that there was a cost estimation for Invoice Number 6441, it did not submit any evidence of a cost estimation approved by LEAA in the district court or in this court.

[9]As discussed *supra* note 7, course of performance evidence is evidence of actions that the parties took after the formation of a contract. Where, subsequent to the formation of a contract, the parties have disregarded certain terms in the contract, the parties may have waived the right to enforce that contractual term. *See John H. Maclin Peanut Co. v. Pretlow & Co.*, 11 S.E.2d 607, 611 (Va. 1940).

611 (Va. 1940) (observing that whether parties have deliberately and mutually disregarded plain terms of a contract, and thus waived contractual rights, is generally a jury question).

Accordingly, we affirm the district court's grant of summary judgment in favor of USAD with respect to USAD's claim to finance charges in connection with invoices 6256, 6660, 6736, 6901, and 6736-1. We reverse the district court's grant of summary judgment in favor of USAD with respect to USAD's claim to finance charges in connection with invoices 6441, and 7650 and remand for further proceedings with respect to such claims.

III.

LEAA also challenges the district court's overruling of its objections to the discovery sanctions imposed upon it by the magistrate judge. We review the grant of discovery sanctions under Rule 37 of the Federal Rules of Civil Procedure for abuse of discretion. *Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The magistrate judge granted USAD's motion for discovery sanctions against LEAA, pursuant to Rule 37(b), for LEAA's failure to comply with Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, which requires timely disclosure of documents that the disclosing party may *use* in support of its claims or defenses. LEAA failed to produce invoices 6256, 6441, 6660, and 6736, which had been approved for payment by LEAA's Director of Marketing, until after the deadline for the exchange of mandatory disclosures under the court's scheduling order, after the close of all discovery, after the filing of motions for summary judgment, and only two weeks before trial.

The magistrate judge found that LEAA "used" these invoices in its motion for partial summary judgment and its response to USAD's motion for partial summary judgment by claiming that "[n]one of the seven (7) invoices . . . are signed or initialed by any agent or representative of LEAA."[10] (J.A. at 243.) The magistrate judge also found that,

---

[10]At oral argument, LEAA admitted that the four invoices were in fact signed or initialed by an LEAA representative and that its claim otherwise in its partial summary judgment motion was incorrect.

by the time the four invoices were produced, USAD "[h]ad already expended considerable time and effort conducting discovery on the issue of [LEAA's] acceptance for payment of these invoices." (J.A. at 243.) Furthermore, USAD submitted a sworn declaration showing that $6,981.50 in counsel fees and costs were directly attributable to LEAA's failure to produce the four invoices, the magistrate judge expressly found that "these fees are reasonable under the circumstances, and that they were in fact incurred due to [LEAA's] failure" to timely disclose the four invoices. (J.A. at 243-44.) The magistrate judge then summarized his findings: "(1) that [LEAA's] conduct is inexcusable even if it does not rise to the level of bad faith; (2) that [LEAA] caused considerable prejudice to [USAD]; (3) that the need for deterrence of this sort of non-compliance with the rules is great; and (4) that less drastic sanctions would not have been effective." (J.A. at 244.) The district court reviewed the evidence, overruled LEAA's objections, and summarily affirmed the magistrate judge's imposition of sanctions.[11]

LEAA makes several arguments that the district court erred. LEAA first contends that USAD did not demonstrate that LEAA acted in bad faith with respect to its late disclosure of the four invoices. Under *Anderson*, we recognized that the "Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under Rule 37." *Anderson*, 155 F.3d at 504. A district court must determine:

> (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.

*Anderson*, 155 F.3d at 504 (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-05 (4th Cir. 1977)). LEAA claims that a district court necessarily must find all four *Anderson* factors to grant sanctions and that USAD failed to show the first factor, "bad faith," because the magistrate judge only stated that LEAA's "conduct is

---

[11]The district court reduced the sanction award to $6,169.00 based on USAD's agreement to reduce its claim by 3.25 hours.

inexcusable even if it does not rise to the level of bad faith." (J.A. at 244.)

LEAA misreads *Anderson*. *Anderson* does not hold that a district court must find that a party acted in bad faith, it merely holds that in determining what sanctions are appropriate, a district court must consider "whether" the party acted in bad faith. *Id.* at 504. Where a district court determines that there was no bad faith, that determination will likely be reflected in a less severe sanction. *Anderson* does not require a finding of bad faith before discovery sanctions can be awarded and to hold otherwise would be at odds with Rule 37(c)(1)'s plain language, which contains no such requirement.

LEAA next makes a semantic argument that it never actually "used" the invoices and did not intend to do so, and thus was not required to disclose them under Rule 26(a)(1)(B), which only requires disclosure of all documents or other tangible items that a party "may use to support its claim or defenses." The concept of "use," however, is defined broadly:

> "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if—in the language of Rule 26(a)(3)—"the need arises."

Fed. R. Civ. P. 26 advisory committee notes to 2000 Amendment. Although LEAA did not actually submit the invoices with their partial motion for summary judgment, LEAA "used" the invoices when it represented that "[n]one of the seven (7) invoices . . . are signed or initialed by any agent or representative of LEAA." (J.A. at 243.) Also, to prove this defense at trial, LEAA would have had to "use" the document as evidence at trial. Thus, the invoices are something that LEAA (1) used in its motion for partial summary judgment and (2) used "to support its claim or defenses." Accordingly, the district court did not abuse its discretion in finding that LEAA used the invoices.

LEAA also contends that there is no evidence that USAD's claimed expenses were caused by LEAA's failure to disclose. The magistrate judge's decision was properly based on USAD's attorney time sheets, deposition receipts, and its sworn affidavit in support of USAD's motion for sanctions. LEAA provided no evidence to the contrary.

Because LEAA's legal arguments are unavailing, the district court did not abuse its discretion by upholding the magistrate judge's award of discovery sanctions in favor of USAD.

## IV.

For the foregoing reasons, (1) the district court's grant of summary judgment in favor of USAD with respect to LEAA's breach of an implied in fact contract claim is affirmed; (2) the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for payment under invoices 6256, 6441, 6660, 6736, 6736-1, and 6901 is affirmed; (3) the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for payment under invoice 7650 is reversed and the merits of the claim should be considered on remand; (4) the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for finance charges in connection with invoices 6256, 6660, 6736, 6901, and 6736-1 is affirmed; (5) the district court's grant of summary judgment in favor of USAD with respect to USAD's claim for finance charges in connection with invoices 6441 and 7650 is reversed and the merits of the claim should be considered on remand; and (6) the award of discovery sanctions is affirmed. We grant LEAA's motion to supplement the appendix with the stipulation that USAD may also file the additional pages that it has identified.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*