**FLAME S.A., Plaintiff,**

**Glory Wealth Shipping Pte. Ltd., Consolidated Plaintiff,**

**Noble Chartering, Inc., Intervening Plaintiff**

v.

**INDUSTRIAL CARRIERS, INC., et al, Defendants.**

**Civil No. 2:13–cv–658.**

United States District Court, E.D. Virginia, Norfolk Division.

Signed Aug. 26, 2014.

Nicholas Robert Tambone, Flame, S.A. Lauren Brooke Wilgus, William Robert Bennett, III, Blank Rome LLP, New York, NY, Stephen Michael Stancliff, David Caldwell Hartnett, Crenshaw, Ware & Martin, PLC, Norfolk, VA, for Plaintiff, Flame, S.A.

Robert Thomas Hicks, Holland & Knight, LLP, McLean, VA, James Harold Power, Marie Elizabeth Larsen, Warren Ernest Gluck, Holland & Knight, LLP, New York, NY, for Consolidated Plaintiff, Glory Wealth Shipping Pte. Ltd.

John Joseph Reilly, Kate Suzanna Woodall, Squire Patton Boggs (U.S.) LLP, Paul Myung Han Kim, Squire Sanders, LLP, New York, NY, David Harlen Sump, Leonard Leroy Fleisig, Willcox & Savage, PC, Norfolk, VA, for Intervening Plaintiff, Noble Chartering, Inc.

Patrick Michael Brogan, Bryan Karl Meals, Davey & Brogan, PC, Norfolk, VA, Sergei Kachura, Law Office of Sergei Kachura, Brownwood, TX, for Defendants, Industrial Carriers, Inc., Vista Shipping, Inc., and Freight Bulk Pte. Ltd.

## ORDER

ROBERT G. DOUMAR, Senior District Judge.

This matter comes before the Court on Freight Bulk Pte Ltd's ("FBP") Appeal to

District Court of Memorandum Opinion and Order of Magistrate Judge Leonard. ECF No. 404. Because Judge Leonard's ruling survives both *de novo* and clearly erroneous or contrary to law review, the Court **OVERRULES** FBP's objections.

## I. FBP'S OBJECTIONS

FBP seeks reversal of Judge Leonard's findings that FBP violated the Court's discovery Orders by failing to produce: "1) documents pertaining to ICI, including corporate records; 2) employees [sic] work books; 3) *in a timely fashion,* Victor Baransky's responsive e-mails; 4) attachment to loan agreement between FBP and Sea traffic; and 5) *in a timely fashion,* attachments to responsive e-mails." ECF No. 404 at 1 (emphasis in original). FBP also objects to "Judge Leonard's 37(b)(2)(A)(i) findings that: 1) Freight Bulk Pte. Ltd. and Vista Shipping, Inc. are alter egos of one another; 2) the loan from Sea Traffic Shipping Co. to Freight Bulk Pte. Ltd. for the purchase of the CAPE VIEWER was a sham transaction for the sole purpose of avoiding creditors." *Id.* at 1–2. FBP also "challenges an implied finding that Victor Baransky controls ICI." *Id.* at 2. Finally, FBP "also seeks reversal of Judge Leonard's Order for FBP and its Counsel to jointly· and severally be responsible for reasonable attorneys' fees and expenses of Flame and Glory Wealth in pursuing their motions for sanctions." *Id.*

## II. LEGAL STANDARD

FBP contends that this Court must make a *de novo* review of orders made by Magistrate Judges concerning dispositive matters. However, it never argues whether Judge Leonard's sanctions were dispositive or even contends that *de novo* review applies. Instead, FBP applies the non-dispositive standard, clearly erroneous or contrary to law, throughout its motion.

ECF No. 404 at 3 ("such ruling is clearly erroneous") at 5 ("Judge Leonard's findings ... are clearly erroneous") at 8 ("Judge Leonard's ruling ... is clearly erroneous").

### A. FEDERAL RULE OF CIVIL PROCEDURE 72

 Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters such as discovery orders. FED.R.CIV.P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court reviews a Magistrate Judge's discovery order under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *Malletier v. Haute Diggity Dog, LLC,* 2007 WL 676222, at *1 (E.D.Va. Feb. 28, 2007). And sanctions ordered per Federal Rule of Civil Procedure 37, so long as they do not involve dismissal, "fall squarely within the jurisdiction of a magistrate judge." *Fin. Markets Int'l, Inc. v. Booz Allen Hamilton, Inc.,* 2013 WL 5538341, at *1 (E.D.Va. Oct. 7, 2013). A court's "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Malletier,* 2007 WL 676222, at *2 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The Fourth Circuit reviews a district judge's discovery decisions for abuse of discretion. *Copen v. House,* 45 F.3d 425, *2 (4th Cir.1994).

 On the other hand, a magistrate judge's order on dispositive motions are reviewed *de novo.* FED.R.CIV.P. 72(b)(3). Although Magistrate Judges do not have inherent authority to sanction a party under Article III, *Reddick v. White,* 456 Fed. Appx. 191, 193 (4th Cir.2011), they do have the power to order sanctions under any other statute or Federal Rule of Criminal

or Civil Procedure. 28 U.S.C. § 636 (providing that the civil contempt authority vested in Magistrate Judges during civil trials presided over with the consent of the parties does not limit the power of Magistrate Judges from issuing sanctions under any other statute or rule). Magistrate Judge Leonard clearly ordered sanctions under Rule 37, *see* Mem. Op. & Order at 19–20, ECF No. 377, 2014 WL 3895933, and the sanctions were made while the litigation was ongoing, *Reddick,* 456 Fed. Appx. at 193, and have not disposed of the case. However, the sanction designating Vista Shipping, Inc. ("Vista") and FBP as alter egos does have a dispositive effect on a portion of plaintiffs' claims.[1] *Manship v. Brothers,* 2012 WL 527349, at *2 n. 1 (E.D.Va. Feb. 16, 2012) (discussing Rule 11 sanctions and their dispositive or non-dispositive nature based upon their effects on any claim or defense); but *see Montanile v. Botticelli,* 2009 WL 2378684 (E.D.Va. July 28, 2009) (deciding that a Rule 37 sanction's effect does not make such a sanction dispositive because the sanctioned party, the plaintiff, brought the case to court and was responsible for its conduct).[2]

Thus the Court has to review those dispositive sanctions *de novo* and those non-dispositive sanctions under a clearly erroneous or contrary to law standard. Both standards, however, lead to the same conclusion, and Magistrate Judge Leonard's entire Memorandum Opinion and Order withstands FBP's objections under either level of scrutiny. Indeed, meeting the

higher *de novo* standard necessarily means that Judge Leonard's Opinion and Order meets the lower clearly erroneous or contrary to law standard. *See Giganti v. Gen–X Strategies, Inc.,* 222 F.R.D. 299, 304 n. 9 (E.D.Va.2004). To be thorough, the Court applies both standards.

## III. ANALYSIS

The Court takes up each contention in turn. As it does, it notes that FBP has cited only three legal authorities in its entire motion. Two citations came in the form of the standard of review to apply, but were not explained, as noted above, and the third citation is simply a reference to the *Vitol* case, which provides the alter ego factors necessary in an action like this. *Vitol, S.A. v. Primerose Shipping Co. Ltd.,* 708 F.3d 527, 533 (4th Cir.2013). This dearth of legal authority makes FBP's motion more akin to an essay than a legal brief and provides the Court with little guidance on the issues before it. FBP's arguments amount to little more than factual attacks on Judge Leonard's findings. Nevertheless, the Court determines whether Judge Leonard's factual findings and legal conclusions were correct under both of the two standards above.

### A. FBP Did Violate the Court's Discovery Order In Relation to the Production of ICI Documents

■ FBP contends that neither FBP

---

1. As Glory Wealth notes in its Amended Complaint, it also brings a fraudulent transfer allegation against the defendants and the alter ego finding is not as critical to its case.

2. Other dispositive pretrial matters include: "(1) motions for injunctive relief, (2) for judgment on the pleadings, (3) for summary judgment, (4) to dismiss or quash an indictment or information made by the defendant, (5) to dismiss or to permit maintenance of a class

action, (6) to suppress evidence in a criminal case, (7) dismiss for failure to state a claim upon which relief can be granted, and (8) to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). These are beyond the Magistrate Judge's power to enter without a district judge's de novo review of a party's objections to the Report and Recommendations filed by the Magistrate. 28 U.S.C. § 636(b)(1) and (b)(1)(C).

nor Viktor Baranskiy[3] has or controls any documents of Industrial Carriers, Inc. ("ICI") with the exception of self-described "commissions calculation," which FBP argues is not even ICI's because Mr. Baranskiy created it. FBP also argues that a transfer from ICI in June 2008 of $39 million to an "undisclosed recipient at Nordea Bank in Denmark" was "almost for certain" "legitimate margin call payments by ICI to an international (Danish) blue-chip fuel company called OW Bunker." ECF No. 404 at 3. Next, FBP argues that Viktor Baranskiy's nominal shareholder position within ICI and his age of twenty-two necessarily mean that he could not have any ICI documents in his possession or control. *Id.* FBP also now certifies that it does not possess any ICI documents. *Id.* at 4. Finally, FBP contends that Judge Leonard impliedly held that Mr. Baranskiy controls ICI and did so in error. *Id.* FBP therefore contends that Judge Leonard's "findings about ICI's documentation and control, unfortunately, are clearly erroneous." *Id.* FBP cites no legal authority for the arguments it makes, and the Court does not agree with FBP's contentions.

First, the Court will not entertain arguments made by counsel that are known "almost for certain." FBP argues that the transfer from ICI in June to a recipient in Nordea Bank, Denmark was "almost for certain" a transfer to OW Bunker for legitimate services. FBP states that it has no "non-judicial way of obtaining positive proof that such transfers indeed were legitimate business transactions." *Id.* at 3. FBP had a judicial avenue to do so—the subpoena—but was denied a subpoena by Judge Leonard because the request was made after discovery concluded. ECF No. 399. FBP's attorney's mistake is no excuse and cannot transfer the onus or burden of proof onto Magistrate Judge Leonard's shoulders.

■ Second, substantial facts in the record support Judge Leonard's findings, notwithstanding Mr. Baranskiy's nominal shareholder status, his age,[4] or the recent certification that the ICI records in question are not in his, Vista's, or FBP's possession. As Judge Leonard correctly observed, "by signing discovery requests, parties certify that after reasonable inquiry they believe that their responses to discovery requests are complete and correct as of the time made and that those responses and or objections are warranted by existing law." Mem. Op. & Order at 19–20, ECF No. 377 (citing FED.R.CIV.P. 26(g)(1) and *In re Outside Wall Tire Litigation*, 2011 WL 5357913, at *2 n. 1 (E.D.Va. Nov. 7, 2011)). FBP did not so certify regarding documents with respect to ICI but argued that it did not have possession of those documents. And even now its certification again claims that neither FBP, nor Vista, nor Mr. Baranskiy possesses the ICI documents. ECF No. 404 at 4; Decl. of Viktor Baranskiy, ECF No. 404. Again this certification fails to meet Rule 26's mandate or Judge Leonard's findings, which were that FBP has not certified that such documents do not exist, not that they were outside of FBP's possession. Mem. Op. & Order at 7. These objections therefore are meritless because they do not address Judge Leonard's rulings. To the extent that FBP is certifying that these documents do not exist, its certification comes too late, and, in Glory Wealth's estimation, is belied by the discovery here. Opp'n at 5, ECF No. 418.

---

**3.** The Court continues to use the spelling of Baranskiy it has throughout this case.

**4.** Mr. Baranskiy's age is of no import. He was a legal adult at the time with family connections in the shipping industry in question.

■ Third, Judge Leonard's implied finding that Mr. Baranskiy controls ICI had substantial support in the record. But before he made that finding, it is important to note that his earlier discovery orders did not rest on a finding that Viktor Baranskiy controls ICI. Instead, Judge Leonard has made clear throughout this case that "FBP was required to produce all responsive documents that concerned any of the named Defendants, i.e. ICI, Vista, FBP, Viktor Baransky and Sergei Baranskiy." Mem. Op. & Order at 9 n. 7. Although Judge Leonard wrote that he "does not accept [the] representation [that FBP controls every entity involved in this lawsuit with the sole exception of ICI]," the Court need not determine whether Judge Leonard meant actual control over its operations, which the tenor of his opinion implies. Instead, FBP merely needs control over the documents to be compelled to produce them. As this Court wrote before:

> A party may be compelled to produce items in its "possession, custody, or control." FED.R.CIV.P. 34(a)(1). Nonparties may be compelled to produce documents under Rule 45. *Id.* at (c). It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if those documents are under the custody or control of a party to the litigation. *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.,* 237 F.R.D. 561, 564 (D.Md.2006) (citing cases). "Control does not require that the party have legal ownership or actual

physical possession of the documents at issue, but rather 'the right, authority or practical ability to obtain the documents from a nonparty to the action.'" *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.,* 286 F.R.D. 288, 292 (E.D.Va.2012) (citing *Bush v. Ruth's Chris Steak House, Inc.,* 286 F.R.D. 1, 5–6 (D.D.C.2010 [2012] )).

Op. & Order at 2, ECF No. 192. Although ICI is a named party in this suit, ICI, like Vista, has yet to make an appearance.[5] The analysis therefore applies with equal force, and for related nonparties, like parent, sister, or subsidiary corporations, courts examine (1) the corporate structure of the party/non-party, (2) the non-party's connection to the transaction at issue in the litigation, (3) the degree that the nonparty will benefit from the outcome of the case; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty has participated in the litigation; (6) common relationships between a party and its related nonparty entity; (7) the ownership of the non-party; (8) the overlap of directors, officers, and employees; (9) the financial relationship between the entities; (10) the relationship of the parent corporation to the underlying litigation; and (11) agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents. *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.,* 286 F.R.D. 288, 292 (E.D.Va.2012) (citing *Steele Software Sys., Corp. v. DataQuick*

---

**5.** FBP previously argued that Vista was a nonparty to this suit in its first Objections to Magistrate Judge Leonard's ruling. Resp. Objections at 5, ECF No. 178 ("To begin with, the legal principles that govern here are settled.... In the Rule 34 context, control is defined as the legal right to obtain required documents on demand. Thus, documents in the possession of a nonparty are not automati-

cally subject to discovery under Rule 34 simply because the nonparty has a corporate relationship to a party to the litigation.") (citation omitted). The Court analyzed those objections under the same standard used here and finds that the nonparty standard applied there and here is appropriate where the named party in question has yet to make an appearance in the suit.

*Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D.Md. 2006)).

Here, many of the directors of Vista were formerly of ICI and are alleged to control FBP. Mr. Baranskiy was a shareholder of ICI and is the beneficial owner of Vista, Sea Traffic, and FBP, among other companies. ICI defaulted on its obligations, and the allegations here are that ICI transferred its monies to Vista to avoid those creditors. Vista provided money to Sea Traffic, which in turn provided the funds for FBP to purchase the M/V CAPE VIEWER. ICI has a strong interest in this case and would benefit greatly by a favorable finding that FBP is not its alter ego. Thus, all but factors one, four, five, and eleven [6] weigh in favor of a finding that FBP has control over the requested discovery documents at issue.

To reiterate, this Court does not make a finding of control over ICI; rather it makes a finding of control of ICI's documents, which FBP maintains it does not possess but not that they do not exist or are outside of FBP's control.[7] Thus to the extent that Judge Leonard found that Mr. Baranskiy controls the documents pertaining to ICI and did not produce them, this Court agrees.

In sum, after a *de novo* review, the Court concludes that Judge Leonard's findings are correct. The Court also determines that those findings are not clearly erroneous or contrary to law. The Court therefore **OVERRULES** FBP's objections.

## B. FBP VIOLATED THE COURT'S DISCOVERY ORDER IN RELATION TO THE PRODUCTION OF EMPLOYEE WORKBOOKS

Magistrate Judge Leonard found that FBP violated his discovery orders by not producing employee workbooks. FBP objects on the grounds that the workbooks are the property of "employees, or maybe even of Ukraine, but definitely not of FBP or its sister companies." ECF No. 404 at 6. FBP characterizes the workbooks as personal property of the individual that are in the possession of an individuals' employer only during the period of employment. *Id.* FBP contends that it cannot produce these without the approval of the employees or "maybe even from the Ukrainian government. Therefore, nonproduction does not constitute a violation of Court's discovery Order." *Id.*

Where does the Court start? Counsel's tentative conclusions that the government of Ukraine controls these workbooks cannot be taken seriously. There is simply no citation to the law to suggest this is the case, and the Court will not entertain surmised legal contentions.

Moreover, as Judge Leonard observed and FBP agrees, the solution to this alleged conundrum was a protective order. FBP writes that Judge Leonard "is absolutely right" on this point and that it did not move for such an order "because its Counsel simply did not timely realize that utilization of such procedural tool was the proper approach [sic]." *Id.* The rules and tools of the lawyer are the lawyer's obligation to know and use. As before, Magis-

---

**6.** At this time there does not appear to be enough information to determine either the weight of these four factors or in whose favor they weigh.

**7.** The declaration's precise language is: "I hereby certify that FBP, Vista, any other of my companies and I personally do not have any ICI documents, they do not exist in my or my companies' possession. The only one document which was in my possession which potentially can be considered an ICI document, my commission calculation for 2008, was already produced to Plaintiffs in this litigation, on May 7, 2014." Decl. of Viktor Baranskiy, ECF No. 404, Ex. 1.

trate Judge Leonard is not obligated to train counsel and cannot provide legal advice. Ours is an adversarial system. Moreover, FBP's *pro hac vice* counsel has always had the services of local counsel in this matter.

For these reasons and those articulated in Judge Leonard's Memorandum Opinion and Order, the Court concludes that, after *de novo* review, Judge Leonard's findings are correct as to the law and fact. The Court also determines that Judge Leonard's findings are not clearly erroneous or contrary to law. The Court therefore **OVERRULES** FBP's objections.

### C. FBP VIOLATED THE COURT'S DISCOVERY ORDER BY NOT PRODUCING ALL RESPONSIVE EMAIL OF VIKTOR BARANSKIY

■ FBP contends that its interpretation of Judge Leonard's discovery orders required only those emails of Mr. Baranskiy that related to his position as FBP's Director. Counsel contends that any other view would "erode the delineation between Viktor Baransky-controlled defendant (FBP, Vista) and non-defendant companies . . . require[ing FBP] to produce all Viktor Baranskiy's emails related to all his companies, not just FBP and Vista [sic]." ECF No. 404 at 7. FBP also argues that it has nevertheless voluntarily handed over all of the responsive emails. *Id.* FBP contends that its interpretation coupled with its voluntary production demonstrates that Judge Leonard's ruling is clearly erroneous. *Id.* FBP also argues that because plaintiffs did not "take FBP up on its offer to have Viktor Baransky deposed videographic means, [it] clearly shows that there was no harm even if the Court were to decide that such emails should have been produced earlier [sic]." *Id.*

Judge Leonard thoroughly addressed these arguments. He wrote:

Despite FBP's "opinion," this Court's discovery orders were clear, and FBP was obligated to provide responsive documents long before the close of discovery. The Court's discovery orders required FBP to comply no later than one week from the date of the orders, i.e. by May 7, 2014. FBP never sought an extension of time from the Court to comply with the discovery orders. Belated compliance with a Court Order more than two months after the Court's deadline and one day before the close of discovery does not constitute compliance.

Mem. Op. & Order at 11–12 (citation omitted).

Judge Leonard cited *Green v. John Chatillon & Sons*, 188 F.R.D. 422 (M.D.N.C. 1998) *aff'd*, 165 F.3d 18 (4th Cir.1998) for the proposition that belated compliance does not constitute compliance to discovery orders. In that case, the district judge dismissed the case with prejudice after plaintiff failed to provide discovery requests over eight months after they were made and two months after a Magistrate Judge's order to do so. *Id.* Here, Judge Leonard ordered the emails produced by May 7, 2014 based on plaintiffs' motions to compel. Production on July 14, 2014 was simply too late and therefore noncompliant.

The Court has reviewed the record *de novo* and concludes that Judge Leonard's finding that FBP violated his discovery order was correct. The Court also concludes that Judge Leonard's finding is not clearly erroneous or contrary to law. FBP's objections therefore are **OVERRULED.**

### D. FBP VIOLATED THE COURT'S DISCOVERY ORDER REGARDING THE SEA TRAFFIC LOAN AGREEMENT

FBP argues that the document Ms. Bobrenko discussed at her deposition, which

has been produced and described as the attachment to the Sea Traffic loan agreement to FBP,[8] represents the entirety of documents relating to this loan agreement. ECF No. 404 at 7. Therefore, FBP contends, no other loan documents exist, and FBP cannot have violated Judge Leonard's discovery order. *Id.* at 8. FBP also avers that it wishes some other documentation exists because such a document would evidence "FBP and Sea Traffic following corporate formalities in dealings between them to the utmost degree." *Id.* at 7. FBP then states, somewhat confusingly, "Document which was produced does deal with repayment, though indirectly, via addressing commercial manager's duties per revenue, and *that* is what Ms. Bobrenko was referring to at her deposition. Therefore, Judge Leonard's ruling that not everything per such loan agreement was produced is clearly erroneous [sic]." *Id.* at 7–8 (emphasis in original). Moreover, FBP claims that Judge Leonard's finding that the loan from Sea Traffic to FBP was a sham transaction is "a logical impossibility and is wrong" because the loan was from one sister company to another and to view the loan as an attempt to avoid creditors is clearly erroneous because FBP "would have [to] argue[ ] that Sea Traffic's first lien ... should prevent the ship from being attached." *Id.* at 8.

Again, FBP provides no law in its objections to Judge Leonard's findings. Rather it argues that the document produced was the loan agreement, in a sense. Judge Leonard rejected this argument after reviewing the purported document. The Court has also reviewed that document and comes to the same conclusion as Judge Leonard—it is clearly not an attachment to the loan agreement providing the terms of the loan's repayment, as FBP contends it indirectly evidences. Rather it was created after the lawsuit commenced and does not discuss any sort of repayment between FBP and Sea Traffic; instead it refers to a ship management agreement between Vista and FBP. ECF No. 342, Exhibit 5. FBP's argument that this document indirectly refers to the loan repayment is implausible on its face.

As to the argument that the sham transaction was an impossibility, that argument is improperly made here. Judge Leonard found that the loan was a sham transaction to avoid creditors as part of the sanctions he imposed, not simply from the facts before him. The sham transaction sanction derives from FBP's violations of this Court's orders, and as the Court explains below, is squarely within Judge Leonard's power to order. FBP's other argument, that it would have to argue that Sea Traffic's lien would prevent the attachment here in order for the transaction to be a sham, is likewise improper for the same reasons. Moreover, FBP offers no law to support its assertions.

Furthermore, FBP admits that it only began repayments of the loan after this lawsuit commenced, because it could not open a bank account in Singapore for almost one year. ECF No. 404 at 9 n. 9. FBP contends that it began making these repayments "to improve corporate governance" and adopt best practices, not to create as evidence for this case. *Id.* at 9. As to FBP's difficulty in opening a Singaporean bank account affecting the repayment schedule, that implication seems specious. The Sea Traffic loan was allegedly made in August 2012, repayments began after this attachment (made November 29, 2013). Even if payments began immedi-

---

8. FBP received the approximately $9 million for the purchase of the Vessel from Sea Traffic (which is controlled by Baranskiy), which in turn received funds from Vista (which is also controlled by Baranskiy).

ately after the attachment, this is more than the year after the loan and longer than the time FBP took to open a bank account in Singapore.

Therefore, upon *de novo* review, the Court concludes that Judge Leonard's findings are correct. The Court further determines that Judge Leonard's findings are not clearly erroneous or contrary to law. As a result, FBP's objections are **OVERRULED.**

### E. FBP VIOLATED THE COURT'S DISCOVERY ORDER BY NOT PRODUCING ALL RESPONSIVE EMAIL ATTACHMENTS

FBP contends that civil unrest and the limitations of Adobe Acrobat prevented it from complying with the Court's discovery order. ECF No. 404 at 9. It also argues that the truncated time within which it had to respond to Judge Leonard's Order carried with it an implied ruling that no extensions would be granted. *Id.* Counsel then argues that its attempt to send all responsive emails without the attachments met the Court's discovery order and that the eventual production of all responsive attachments also meets the Court's Order under the "challenging" circumstances FBP encountered. *Id.* at 10. FBP also admits that it "did eventually produce all attachments to all responsive emails, albeit not in the time period mandated by the Court's discovery order." *Id.* at 9.

If FBP was having trouble complying with the Court's Order, it should have moved for an extension of time. It did not. Instead, FBP blames the violence in Odessa for its production delay. While the Court is not indifferent to the dangers in the Ukraine, these dangers do not excuse a simple motion for an extension of time citing those dangers. In addition, FBP blames its choice of software for the delay in producing the email attachments because Adobe Acrobat does not integrate attachments to email from Microsoft Outlook.

FBP ultimately frames its choice as one where all emails could be produced with some attachments, or all attachments could be produced with only some emails on time. This is a false choice because as Flame alleged in its Motion for Sanctions, FBP did not produce a single attachment on time and because Court Orders are not to be partially obeyed. Moreover, FBP was obligated to produce emails under the discovery order following motions to compel based on positions FBP took which Judge Leonard found were not substantially justified. Order at 8, ECF No. 209; Order at 7, ECF No. 210.

Because belated compliance does not constitute compliance, *Green,* 188 F.R.D. at 424–25 and because FBP's newly proffered excuses (inconsistent with those offered Judge Leonard) lack substance and amount to no more than counsel's mistakes, Judge Leonard's finding that FBP violated his discovery order was correct. After a *de novo* review, the Court therefore **OVERRULES** FBP's objections. Judge Leonard's findings are correct. They are also not clearly erroneous or contrary to law.

## IV. THE SANCTIONS ORDERED WERE APPROPRIATE

Having determined that Judge Leonard's findings survive *de novo* review and were not clearly erroneous or contrary to law, the Court analyzes the appropriateness of the sanctions Judge Leonard imposed.

Judge Leonard correctly looked to Federal Rule of Civil Procedure 37(b), which governs sanctions "for not obeying a discovery order." FED.R.CIV.P. 37(b)(2)(A). The Rule provides: "If a party . . . fails to obey an order to provide or permit discov-

ery ... the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rending a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* "[T]he 'Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under Rule 37.'" *Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc.,* 61 Fed.Appx. 822, 830 (4th Cir.2003) (quoting *Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians,* 155 F.3d 500, 504 (4th Cir.1998)). A judge must determine: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance [sic] caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.*

### A. APPLYING THE TEST

#### 1. BAD FAITH

■ Judge Leonard found that "almost all disputes can be traced back to FBP's noncompliance or 'stonewalling' tactics." Mem. Op. & Order at 20, ECF No. 377.

Judge Leonard found FBP gave inconsistent answers when explaining its non-compliance, failed to fully explain why it did not produce discovery as ordered, and parsed words and narrowly interpreted Court orders for its own benefit. *Id.* Judge Leonard's findings are correct. Indeed, even in its current objections, FBP offers new excuses for non-compliance and continues to profess that its interpretations of Judge Leonard's orders were correct despite continued and clear rejections of FBP's interpretations. For example, FBP continues to maintain that its production of emails was voluntary, as it did before Judge Leonard. To do so after Judge Leonard rejected this position in his orders granting plaintiffs' motions to compel, Order at 4, ECF No. 209, Order at 4, ECF No. 210, which FBP did not object to, is to wilfully misread Judge Leonard's orders.

These repeated abuses support a finding of bad faith. *Plant v. Merrifield Town Ctr. Ltd. P'ship,* 711 F.Supp.2d 576, 587 (E.D.Va.2010) ("[B]ad faith is clearly evidenced by the repeated and flagrant disregard for the binding orders of the magistrate judge and plaintiffs' counsel's misrepresentation of material facts concerning plaintiffs' noncompliance with these orders."). Upon *de novo* review of Judge Leonard's findings, the Court concludes that he was correct. Moreover, his findings were not clearly erroneous or contrary to law.

#### 2. AMOUNT OF PREJUDICE CAUSED

■ Judge Leonard found that FBP's actions prejudiced plaintiffs. Specifically, he found:

FBP's violation of the Court's discovery orders by failing to produce documents it was required to produce or producing them months after it was required to do so certainly impacted the Plaintiffs' ability to fully examine the fact witnesses

who were deposed in Istanbul in early July. Plaintiffs have the burden of proof in this matter, and the Court finds that continual delays in the production of discovery by FBP have prejudiced the ability of Plaintiffs to gather the necessary evidence to put on their case in chief. FBP's actions (or omissions) have needlessly increased the expense, annoyance, and delay of these proceedings.

*Id.* at 21–22. This Court agrees. FBP has adopted a bunker mentality throughout this litigation, and its delays, employed throughout discovery, have caused much prejudice. The evidence sought by plaintiffs goes to the heart of their claims and is therefore material to their cases. *Robertson v. DECO Sec. Inc.*, 2010 WL 3781951 at *5 (D.Md. Sept. 22, 2010). The prejudice thus is clear because FBP's actions hindered plaintiffs' ability to build their cases. *Id.*

In addition, the repeated motions to compel and now twice-ordered sanctions demonstrate the delay and prejudice well, as does the confusion regarding Mr. Baranskiy's availability for deposition and trial.[9] The expense, annoyance, and delay of discovery attendant with FBP's actions therefore also prejudiced plaintiffs. *Anderson*, 155 F.3d at 505.

After a *de novo* review and for the reasons Judge Leonard articulated and those reasons articulated herein, the Court concludes that Judge Leonard's finding was correct. It further concludes that the finding was not clearly erroneous or contrary to law.

### 3. NEED FOR DETERRENCE AND WHETHER LESS DRASTIC SANCTIONS WOULD HAVE BEEN EFFECTIVE

Judge Leonard next considered "the need for deterrence of the particular sort

9. The Court addressed that matter in an earlier memorandum opinion. *See* Mem. Op. &

of non-compliance demonstrated by FBP and the effectiveness of less drastic sanctions." Mem. Op. & Order at 22. As Judge Leonard observed, he had already sanctioned FBP under Rule 37, awarding fees and costs to Plaintiffs for failure to comply with its discovery obligations. *Id.; see* Order at 7, ECF No. 210. Because these sanctions "did not deter further failures and non-compliance . . . [Judge Leonard found] that this less drastic sanction was not effective." *Id.* He therefore found "great need for deterrence of this type of discovery abuse, and that less drastic sanctions such as those previously imposed proved ineffective to deter FBP's non-compliance." *Id.* This Court agrees.

■ Although Judge Leonard's analysis did not expand upon the great need to deter this type of non-compliance, the Court **FINDS** that the need was met. Continued contumacious behavior and abuse of the Courts through non-compliance with its orders cannot be tolerated. And with discovery's important role in modern litigation, deterrence is greatly needed. Otherwise, the integrity of the discovery process is undermined, as Judge Leonard correctly observed, *see Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D.Md.2000), and parties may be left with incomplete cases while the judicial process is disrupted. *Robertson*, 2010 WL 3781951 at *5.

For the reasons Judge Leonard articulated and for those articulated herein, the Court concludes, upon *de novo* review, that Judge Leonard's finding was correct. Moreover, Judge Leonard's finding was not clearly erroneous or contrary to law. FBP's objections therefore are **OVERRULED.**

Order, ECF No 415.

## B. THE SANCTIONS

■ As the Court agrees that sanctions were warranted under Rule 37 and the *Anderson* factors, the only question remaining is whether the specific sanctions Judge Leonard ordered were appropriate. The Court **FINDS** that they are. As Judge Leonard correctly and succinctly put it:

> FBP's disobedience has directly impacted Plaintiffs' ability to prove that Viktor Baransky's companies are alter egos for each other, which Plaintiffs must establish to prove their case. The documents that FBP failed to produce, or produced very late, i.e. ICI corporate records, Mr. Baransky's emails and attachments, the loan repayment terms at issue regarding the CAPE VIEWER, and the employee work records, all conceivably would bear on the issue of the extent to which the named Defendants intermingle corporate assets and employees, and are, in fact, alter egos for each other. FBP's violation of the discovery orders has made it that much more difficult for Plaintiffs to prove their alter ego theory, which may very well have been the purpose of FBP's noncompliance.

Mem. Op. and Order at 23. The Court now turns to each sanction.

Judge Leonard, pursuant to Rule 37(b)(2)(A)(i) found and designated as established for the purposes of the trial: "1) Freight Bulk Pte. Ltd. and Vista Shipping, Inc. are alter egos of one another; 2) the loan from Sea Traffic Shipping Co. to Freight Bulk Pte. Ltd. for the purchase of the CAPE VIEWER was a sham transaction for the sole purpose of avoiding creditors; and 3) had any Industrial Carriers, Inc. documents been produced by FBP in compliance with the Court's discovery orders, those documents would have been favorable to the Plaintiffs and harmful to the Defendants." Mem. Op. & Order at

24. Next, pursuant to Rule 37(b)(2)(A)(ii), Judge Leonard prohibited FBP from: "offering any evidence with respect to repayments made under the loan agreement between Sea Traffic Shipping Co. and Freight Bulk Pte. Ltd. for the purchase of the CAPE VIEWER." Finally, Judge Leonard, pursuant to Rule 37(b)(2)(C), ordered FBP and its counsel jointly to pay reasonable attorneys' fees and expenses of Flame and Glory Wealth in pursuing their motions for sanctions. Fed.R.Civ.P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

Upon *de novo* review, the Court **FINDS** that Judge Leonard's sanctions were appropriate. They were also not clearly erroneous or contrary to the law. FBP's objections are consequently **OVERRULED.**

### 1. VISTA AND **FBP**

Judge Leonard ordered that, for the purposes of this action, FBP and Vista Shipping are alter egos of another. He correctly pointed out that the case does not turn on this sanction, as plaintiffs still must prove that ICI is the alter ego of FBP. Given the magnitude of FBP's violations, this is a wholly appropriate sanction under the Rule 37(b)(2)(A)(i) (empowering a judge to direct that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims).

Of note, FBP makes a truly remarkable claim, again without any legal citation: "FBP does recognize that its chances to defend FBP and Vista from an ultimate

finding of alter ego of each other are not overwhelming, yet reiterates that applying a *Vitol* alter ego standard to FBP's dealings with Vista is violative of due process due to absence of prior notice that FBP–Vista dealings would be judged by a US-based corporate governance standard." ECF No. 404 at 9. FBP also contends, in a footnote and without legal citation, "As such ruling goes to the merits of the case, being a necessary step to prove FBP's liability [sic]. Moreover, as the Court does not have jurisdiction over Vista and Vista did not make an appearance, such finding against Vista would be also deficient on the due process grounds." ECF No. 404 at 8 n. 7. Frankly the Court does not see the link between these statements and the issue at hand. The question is whether Judge Leonard's sanction was appropriate under the *Anderson* factors. The Court **FINDS** that it was after *de novo* review and also determines that Judge Leonard's decision was not clearly erroneous or contrary to law. FBP's objections therefore are **OVERRULED.**

### 2. Sham Transaction and Repayments Between FBP and Sea Traffic

Judge Leonard's sanctions finding that the loan from Sea Traffic to FBP was a sham transaction and preventing FBP from offering any evidence with respect to repayments made under the loan agreement between Sea Traffic and FBP for the purchase of M/V CAPE VIEWER were also appropriate sanctions in this matter. Based on the record, Judge Leonard found FBP's protestations that 1) the purported loan agreement document produced evidences the loan agreement and 2) that no other loan agreement exists to be meritless, and the Court agrees with his conclusion. Indeed, what FBP produced is an addendum to a ship management agreement, ECF No. 342, Exhibit 5, not the attachment to the loan agreement Ms. Bo-

brenko described in her deposition. Accordingly, Judge Leonard's sanctions are wholly appropriate under Rule 37(b)(2)(A)(ii).

This sanction may not have strong affect. FBP concedes: "irrespective of yet in line with Judge Leonard's ruling prohibiting FBP from using any evidence of repayment of such internal loan from Sea Traffic to FBP, FBP will not be using such evidence of repayment anyway, as there were no repayments before the attachment. . . ." ECF No. 404 at 9.

The Court **FINDS** that the sanction was correct after *de novo* review and also determines that Judge Leonard's decision was not clearly erroneous or contrary to law. Consequently, FBP's objection is **OVERRULED.**

### 3. ICI Production

▮ Judge Leonard also ordered the negative inference that had any ICI documents been produced by FBP in compliance with his orders, those documents would have been favorable to the plaintiffs' positions. Under Rule 37(b)(2)(A)(i) a Court may "direct[ ] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims. . . ." Fed.R.Civ.P. 37(b)(2)(A)(i).

The circumstances here justify Judge Leonard's findings. Despite FBP's arguments to the contrary, it has not certified that no ICI documents responsive to the Court's orders exist. Therefore a negative inference based on FBP's violations with regards to ICI's unproduced documents is appropriate.

Upon *de novo* review, Judge Leonard's sanction was correct. It was also not clearly erroneous or contrary to the law. FBP's objection therefore is **OVER-RULED.**

#### 4. JUDGE LEONARD APPROPRIATELY SANCTIONED ALL DEFENSE ATTORNEYS

■ Finally, FBP's counsel continues to argue that his positions have been justified regarding the discovery orders in this case. Mr. Kachura writes, in arguing in favor of FBP's position:

What is viewed by Judge Leonard as FBP's obstructionism and narrow interpretation of Court's discovery orders is viewed by FBP's Counsel, more precisely, by FBP's lead Counsel Sergei Kachura, as proper utilization of protections which corporate form provides. FBP is not a parent company of Vista, hence FBP still does not agree with a ruling obligating it to produce documents in Vista's possession. FBP's acted in good faith in attempting to reconcile various parts of the Court's orders, the law regarding discovery per related entities, and many other issues of law and fact.

ECF No. 404 at 10. The Court already rejected FBP's claims pertaining to Vista in an Order upholding Judge Leonard's ruling, ECF No. 192, so FBP was clearly on notice that its interpretation was incorrect as well as at odds with this Court's precise determinations. Indeed, Judge Leonard made his ruling clear in multiple orders, ECF Nos. 209 & 210, and from the bench. ECF No. 147 at 22, 26–28. FBP did not object to these rulings. Thus FBP's protestations that it was acting in good faith while trying to reconcile the applicable law and the facts in this case is

without merit. There was simply nothing to reconcile.

Next FBP contends that it has produced enough documents to mollify plaintiffs and prepare their case. FBP's determinations on this matter are not enough. Indeed, FBP contends that "When it comes to the quantity and quality of discovery received, Plaintiffs are in no way standing in the shoes of Æthelred the Unready; they are standing in the shoes of at least Hannibal if not of Alexander the Great." ECF No. 404 at 10.[10] FBP further argues that the attorneys here should not be sanctioned because it will hurt them in their careers, writing "an attorney once in a while indeed may be asked to complete some questionnaire or other official document which inquires whether such attorney has ever been sanctioned, with a positive answer carrying negative ramifications." *Id.* at 11. FBP continues in its argument:

Plaintiffs have also used every rule in the book in relationship to discovery and other matters in this case. It's just that FBP is not turning this case into an all-out [sic] brawl, for example, by filing sanction against Glory Wealth for not fully complying with the Court's ECF–310 discovery Order; or filing motion for sanctions against Flame in regards to its blatant violation of confidentiality agreement via disclosure of hundreds of highly confidential documents via its Court filing ECF–358, Exhibit 5."

*Id.* Finally, FBP contends that should the Court sanction FBP and its attorneys, it

---

**10.** The Court observes that FBP's allusions are inapposite. Æthelred's name has been misinterpreted. His byname came from "unræd," a pun on his name meaning "noble counsel, no counsel" and implies either "that he received no good advice from his counselors (or ignored it), or that he adopted unrædas, ill-advised policies...." ANN WILLIAMS, ÆTHELRED THE UNREADY: THE ILL-COUNSELED KING 19 (2003). Either way, his is not a

reign any counsel should invoke for or against a proposition. As to Hannibal, he lost the Second Punic War and went into exile before poisoning himself. (The Court expresses no view on the instant case's conclusion.) And Alexander the Great often won battles with far fewer men than his opponents. These historical references do not boost counsel's argument.

should sanction Mr. Kachura only, and not local counsel, Patrick Brogan.

Indeed, attorneys' careers are made on their reputations and sanctions can carry great weight. But attorneys craft strategies and have obligations to the Court. Local counsel shares these obligations with *pro hac vice* attorneys. *See* Local Rule 83.1(D)(3) and (F). Indeed, local counsel are relied upon, and this Court routinely tells local counsel to be prepared to argue any and all motions. *See e.g.,* ECF No. 50. If local counsel is not to be sanctioned, then the Court is left with the inevitable conclusion that local counsel did not perform his duties under the local rules. This latter conclusion would invite different and possibly more drastic sanctions and is not in tune with local counsel's experience and reputation, which is sterling. The Court therefore will not make this conclusion.

Instead, Judge Leonard appropriately fined both FBP and its counsel. The first award of attorneys' fees, which only leveled fees and costs on FBP, did not budge FBP's counsel. Thus sanctions leveled only against FBP were ineffective and their failure necessitates the imposition of more drastic, joint sanctions on FBP and its counsel. *Anderson,* 155 F.3d at 504 (4th Cir.1998). If the second sanction, which requires payment by both FBP and its attorneys, cannot alter the behavior here, then the legal profession has truly entered a dark age.

Upon *de novo* review, Judge Leonard's sanctions were correct. They were also not clearly erroneous or contrary to the law. Consequently, FBP's objection is **OVERRULED.**

## V. CONCLUSION

Having performed a *de novo* review of the record and Judge Leonard's Memorandum Opinion and Opinion, the Court **OVERRULES** FBP's Objections. The Court also **FINDS** that Judge Leonard's Memorandum Opinion and Order was not clearly erroneous or contrary to law and consequently **OVERRULES** FBP's Objections under that lower standard too.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**